## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.*,[1] | Case No. 16-11596 (JTD) |
| *Debtors.* | Jointly Administered |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | Adv. Pro. No. 21-51420 (JTD) |
| *Plaintiff,* v. | |
| ANDERSON MEDIA CORPORATION, *et al.*, | **Re: Adv. Docket Nos. 9, 10** |
| *Defendants.* | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

KAUFMAN, COREN & RESS, P.C.
(Pro hac vice)
Steven M. Coren, Esq.
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170

COZEN O'CONNOR
John T. Carroll, III (DE Bar No. 4060)
1201 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2028
Fax: (302) 295-2013

Dated: February 11, 2022

*Attorneys for Plaintiff*

---

[1]     The Debtors are: Our Alchemy, LLC, Case No. 16-11596 and Anderson Digital, LLC, Case No. 16-11597.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.   NATURE AND STAGE OF THE PROCEEDING ................................................................. 1

II.   INTRODUCTION ................................................................................................................. 1

III.   BACKGROUND .................................................................................................................. 2

IV.   MOTION TO DISMISS STANDARD .............................................................................. 12

V.   ARGUMENT ...................................................................................................................... 14

    A. The Trustee's Actual Fraudulent Transfer Claims Are Well-Pled and More
    Than Sufficient to Survive Defendants' Facial Attack. ..................................................... 14

        1. There Is No Need to Decide Which State's Law Governs the Fraudulent
        Transfer Claims Because UFTA Applies in Both Delaware and Texas. ................ 14

        2. The Complaint States Claims to Avoid and Recover Defendants'
        Actually Fraudulent Transfers. ............................................................................. 17

        3. The Trustee's Fraudulent Transfer Claims are Not Time Barred. ......................... 20

    B. Defendants' Motion to Dismiss the Trustee's Breach of Fiduciary Duty and
    Aiding and Abetting Claims is Without Merit. ................................................................. 25

        1. Defendants Fail to Establish That The Trustee's Claims Are Time
        Barred. .................................................................................................................. 25

        2. The Trustee States A Claim For Breach of Fiduciary Duty and Aiding
        and Abetting Fiduciary Duty, And Defendants' Standing Argument is
        Specious. ............................................................................................................... 27

VII.   CONCLUSION ................................................................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*AJZN, Inc. v. Yu*, No. CV 13-149 GMS, 2015 WL 331937 (D. Del. Jan. 26, 2015) .................... 19

*Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. CIV.A. 762-N, 2005 WL 1594085
(Del. Ch. June 29, 2005) ................................................................................................... 26

*ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008) ................................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 12

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585 (5th Cir. 2020) ................................ 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 12

*Carr v. New Enterprise Assocs., Inc.*, 2018 WL 1472336 (Del. Ch. 2018) ................................. 25

*Certainteed v. Celotex Corp.*, 2005 WL 217032 (Del. Ch. Jan. 24, 2005) ................................. 26

*Duran v. Henderson*, 71 S.W.3d 833 (Tex. App. 2002) ....................................................... 21, 26

*Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474
(Tex. App. 1989) ............................................................................................................... 27

*Elgohary on behalf of Texas Halo Fund I, LLC v. Steakley*, No. 4:17-CV-01534,
2017 WL 5514373 (S.D. Tex. Oct. 10, 2017) .................................................................... 29

*Est. of Erwin*, No. 13-20-00301-CV, 2021 WL 6129130 (Tex. App. Dec. 29, 2021) ................. 25

*Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624 (Tex.Civ.App.-Houston [14th Dist.]
1973, no writ.) ................................................................................................................... 29

*Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. CV H-04-2833,
2005 WL 8165022, at *6 (S.D. Tex. Mar. 31, 2005) ......................................................... 27

*Flores v. Robinson Roofing & Const. Co.*, 161 S.W.3d 750 (Tex. App. 2005) .......................... 18

*Halpern v. Barran*, 313 A.2d 139 (Del. Ch. 1973) .................................................................... 26

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989) ....... 15

*Household Int'l, Inc. v. Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369 (D. Del. 2003) ............. 13

*In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267 (3d Cir. 2004) ................................................. 14

*In re Am. Bus. Fin. Servs., Inc.*, 384 B.R. 80 (Bankr. D. Del. 2008) .......................................... 13

*In re AMC Investors, LLC.*, 524 B.R. 62 (Bankr. D. Del. 2015) ................................................ 25

*In re Boyd*, No. ADV 12-05107, 2012 WL 5199141 (Bankr. W.D. Tex. Oct. 22, 2012) ...... 20, 27

*In re Charys Holding Co.*, 2010 WL 2774852 (Bankr. D. Del. July 14, 2010) ........................... 13

*In re Cmty. Bank of N. Va.*, 622 F.3d 275 (3d Cir. 2001) ........................................................... 22

*In re Draw Another Circle*, 602 B.R. 878 (Bankr. D. Del. 2019) .............................................. 27

*In re DVI, Inc.*, 2008 WL 4239120 (Bankr. D. Del. Sept. 16, 2008) .......................................... 14

*In re FAH Liquidating Corp.*, 572 B.R. 117 (Bankr. D. Del. 2017) ........................................... 16

*In re Fedders N. Am., Inc.*, 405 B.R. 527 (Bankr. D. Del. 2009) .................................................. 13

*In re Heritage Org., LLC*, No. 04-35574-BJH-11, 2008 WL 5215688
(Bankr. N.D. Tex. Dec. 12, 2008)........................................................................................... 20

*In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611 (D. Del. Nov. 15, 2005) .......................... 22

*In re Jackson*, No. 08-41635, 2010 WL 2900998 (Bankr. E.D. Tex. July 21, 2010)................... 29

*In re Kahn*, 533 B.R. 576 (Bankr. W.D. Tex. 2015).................................................................... 27

*In re Mandel*, No. 10-40219, 2011 WL 4599969 (Bankr. E.D. Tex. Sept. 30, 2011) ................. 28

*In re Mercedes–Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009) ..................... 17

*In re Mervyn's Holdings, LLC*, 426 B.R. 488 (Bankr. D. Del. 2010) ..................................... 15, 16

*In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003 ...................................................................... 24

*In re Nat'l Serv. Indus., Inc.*, No. AP 14-50377 (MFW), 2015 WL 3827003
(Bankr. D. Del. June 19, 2015) .............................................................................................. 22

*In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC), 2013 WL 5755058
(Bankr. D. Del. Oct. 16, 2013)................................................................................................. 3

*In re Northstar Offshore Grp., LLC*, 616 B.R. 695 (Bankr. S.D. Tex. 2020)........................ 21, 24

*In re OODC, LLC*, 321 B.R. 128 (Bankr. D. Del. 2005) ............................................................. 12

*In re Our Alchemy, LLC*, No. 16-11596 (KG), 2019 WL 4447545
(Bankr. D. Del. Sept. 16, 2019) ............................................................................................. 19

*In re Physiotherapy Holdings, Inc.*, 2017 WL 5163515 ............................................................. 17

*In re Physiotherapy Holdings, Inc.*, No. 13-12965(KG), 2017 WL 5163515
(Bankr. D. Del. Nov. 6, 2017).................................................................................................. 17

*In re Soza*, 542 F.3d 1060 (5th Cir. 2008) ............................................................................... 19

*In re Student Fin. Corp.*, 335 B.R. 539 (D. Del. 2005) .............................................................. 13

*In re Supplement Spot, LLC*, 409 B.R. 187 (Bankr. S.D. Tex. 2009)......................................... 27

*In re Tribune Co.*, 464 B.R. 126 (Bank. D. Del. 2011) .............................................................. 18

*In re UD Dissolution Corp.*, 629 B.R. 11 (Bankr. D. Del. 2021)................................................. 13

*Janvey v. Willis of Colorado Inc.*, No. 3:13-CV-3980-N, 2014 WL 12670763
(N.D. Tex. Dec. 5, 2014) ....................................................................................................... 21

*Jones v. Dyna Drill Techs., LLC*, No. 01-16-01008-CV, 2018 WL 4016413
(Tex. App. Aug. 23, 2018) ..................................................................................................... 18

*JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019) ................................ 21

*Klein v. Cornelius*, 786 F.3d 1310 (10th Cir. 2015) .................................................................. 24

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ............................................. 28

*Miller v. ANConnect, LLC, et al.*, Bankr. D. Del. Adv. Pro. No. 18-50633-JTD .......................... 2

*Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2014 WL 12572881 (N.D. Tex. Dec. 17, 2014) ................................................................. 23

*Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458 (D. Del. 2010)........ 17

*Petras v. Mole*, No. 3:11-CV-1402-N, 2012 WL 13103200 (N.D. Tex. May 17, 2012) ............ 27

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)....................................................... 12

*Plas-Tex, Inc. v. Jones*, No. 03-99-00286-CV, 2000 WL 632677 (Tex. App. May 18, 2000)..... 27

*Ramirez Cap. Servs., LLC v. McMahan*, No. 4:21-CV-00241-ALM, 2021 WL 5907791 (E.D. Tex. Dec. 14, 2021) ..................................................................................................... 29

*Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2015 WL 13034513 (N.D. Tex. Apr. 21, 2015).................................................................................................... 21

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ......................................................................... 13

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984)................. 13

*WaveDivision Holdings, LLC v. Highland Capital Mgmt. L.P.*, 2011 WL 13175837 (Del. Super. Aug. 7, 2012)................................................................................................... 15

*White v. Zhou Pei*, 452 S.W.3d 527 (Tex. App. 2014) ................................................................ 28

*Zenner v. Lone Star Striping & Paving, L.L.C.*, 371 S.W.3d 311 (Tex. App. 2012) ................... 23

**Other Authorities**

11 U.S.C. § 541 ............................................................................................................................. 15

6 Del. C. § 1301 ............................................................................................................................ 19

6 Del. C. 1304 ........................................................................................................................ *passim*

6 Del. C. 1309 ........................................................................................................................ *passim*

Federal Rule of Bankruptcy Procedure 7012.................................................................................. 1

Federal Rule of Civil Procedure 9 ........................................................................................ *passim*

Federal Rule of Civil Procedure 12 .................................................................................... 12, 20

Tex. Bus. & Com. Code § 24.002.................................................................................................. 19

Tex. Bus. & Com. Code § 24.005.................................................................................................. 18

Tex. Bus. & Com. Code § 24.008.................................................................................................. 15

Tex. Bus. & Com. Code § 24.010............................................................................................ 15, 20

Tex. Bus. Orgs. Code § 101.452................................................................................................... 29

Plaintiff George L. Miller, in his capacity as the Chapter 7 Trustee ("Plaintiff" or the "Trustee") for the jointly administered bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson Digital" and, together with Alchemy, collectively, the "Debtors"), submits this Memorandum of Law in opposition to the Motion to Dismiss (the "Motion") filed by Defendants Anderson Media Corporation ("Anderson Media"), ANConnect, LLC ("ANConnect"), Anderson Management Services, Inc. ("AMS"), Charles C. Anderson, Jr., Jay R. Maier, Bill Lardie, and Chuck Taylor (collectively, "Defendants").

## I.    NATURE AND STAGE OF THE PROCEEDING

The Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code on July 1, 2016.  This adversary proceeding was commenced by Complaint on December 29, 2021 and asserts claims against the Defendants under state law.  Defendants have moved to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(6) (applicable here pursuant to Federal Rule of Bankruptcy Procedure 7012), to which the Trustee objects and responds in this Memorandum.

## II.    INTRODUCTION

The Trustee's Complaint seeks to avoid and recover as actual fraudulent transfers ANConnect's distribution of $23.8 million dollars to its affiliates Anderson Media and AMS— rendering ANConnect insolvent while the Debtor was pursuing claims against ANConnect in Delaware state court.  The distributions, which were part of Defendants' plan to wind down the business of ANConnect, were made to insiders for no consideration just months after Alchemy asserted substantial counterclaims against ANConnect, and consisted of substantially all of ANConnect's assets, rendering ANConnect insolvent.  The Complaint alleges a fraudulent motive and a confluence of at least eight badges of fraud—i.e., insider status, lack of reasonably equivalent

value, insolvency, concealment, proximity to the institution of a legal claim (i.e., a substantial debt), transfer of substantially all assets, and the removal of assets.  Simply stated, Defendants' attack on the sufficiency of the pleading is meritless and its motion should be denied.

Defendants' statute of limitations defense is specious as well—the Uniform Fraudulent Transfer Act deems actual fraudulent transfer claims timely when brought within one year after the applicable transfer was or could reasonably have been discovered by the plaintiff.  Application of this discovery rule requires a fact-sensitive determination that is inappropriate at the pleading stage, especially when, as in this case, the Complaint alleges that the transfers were concealed and not reasonably discoverable until revealed by ANConnect's production of financial information in the companion adversary proceeding pending in this Court, captioned *Miller v. ANConnect, LLC, et al.*, Bankr. D. Del. Adv. Pro. No. 18-50633-JTD (the "Companion Avoidance Action").

Finally, Defendants' attack on the Trustee's breach of fiduciary duty claims fails as a matter of law because under Texas law—the state whose law is applicable because that is the formation state of ANConnect, the transferor—creditors have standing to pursue breach of fiduciary duty claims when they have been prejudiced by the conduct of the fiduciaries.  Creditor Alchemy was harmed when the fiduciary Defendants caused ANConnect to transfer millions of dollars to insiders shortly after Alchemy asserted claims against it.  The Trustee's fiduciary duty claims are timely under the discovery rule.

The Defendants' Motion should be denied.

## III.    BACKGROUND

### The Parties

Alchemy, previously known as Millennium Entertainment, was an independent distributor of film and television content across all platforms in North America, including DVD, digital, and

video-on-demand platforms.  *See* Complaint at ¶ 7.  In July 2015, Alchemy agreed to purchase certain physical home video and digital distribution capabilities from Defendant ANConnect, including, *inter alia*, the purchase of Debtor Anderson Digital.  *Id.*  Debtors Alchemy and Anderson Digital are Delaware limited liability companies.  *See* Bankr. D. Del. No. 16-11596 at ECF No. 1 (Chapter 7 petition establishing that Debtor Our Alchemy, LLC is a Delaware Limited Liability Company); Bankr. D. Del. No. 16-11597 at ECF No. 1 (Chapter 7 petition establishing that Debtor Anderson Digital, LLC is a Delaware Limited Liability Company).[2]

Defendant Anderson Media is a closely held Delaware corporation which functions as the holding company for the Anderson family's media empire.  Complaint at ¶ 8.  Anderson Media is the ultimate parent of a conglomerate of direct and indirect subsidiaries which originated in 1916 as a lean-to newsstand in Florence, Alabama, eventually rising to prominence as one of the largest wholesalers and distributors of books, magazines, movies, and other media in the United States. *Id.* at ¶¶ 8, 16.  As described in a report prepared by a court-appointed examiner in the 2009 bankruptcy of Anderson Media affiliate Anderson News, LLC, which at the time was one of the largest magazine wholesalers in the United States, "what started as a makeshift newsstand almost a century ago evolved into a family empire of businesses that, among others, have included or contemplated (1) sales of beef jerky, (2) distribution of books and music, (3) manufacture of acrylic and wood display fixtures, (4) sales of fireworks and (5) provision of magazine merchandising and distribution services."  *Id.* at ¶ 17.

Since its inception, Anderson Media has been owned and controlled by the Anderson

---

[2]     The Court can take judicial notice of the state of formation of the Debtors based on their bankruptcy petitions.  *See, e.g., In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC), 2013 WL 5755058, at *1 n.4 (Bankr. D. Del. Oct. 16, 2013).

family, of which Defendant Charles C. Anderson, Jr. is the patriarch. *Id.* at ¶¶ 11, 18. Anderson Media operates as an integrated unit with its subsidiaries, which it dominates and controls. *Id.* at ¶ 19. Anderson Media issues consolidated balance sheets which include its subsidiaries and conducts board meetings at which the Anderson Media board of directors makes decisions concerning the operation of subsidiaries. *Id.* Anderson Media's subsidiaries include Defendants ANConnect and AMS. *Id.* at ¶¶ 9, 10, 19. AMS is the sole Manager of ANConnect, and both AMS and ANConnect are wholly owned by Anderson Media. *Id.* at ¶ 9-10. Defendant Anderson is the chair of the board of directors of Anderson Media, President/Chief Executive Officer of Anderson Media, and the Sole Director of AMS, in which capacity he controls ANConnect. *Id.* at ¶ 11. Defendant Jay R. Maier is the Chief Financial Officer/Secretary of Anderson Media and the Secretary of ANConnect. *Id.* at ¶ 12. Defendant Bill Lardie is the Chief Executive of ANConnect. *Id.* at ¶ 13. Defendant Chuck Taylor is the Chief Financial Officer of ANConnect. *Id.* at ¶ 14. Defendants Anderson, Maier, Lardie, and Taylor are referred to collectively as the "Director/Officer Defendants."

### Anderson Media Is Forced To Pivot In The Face of a Rapidly Changing Industry

While Anderson Media had historically dominated traditional forms of media, the advent of widely available high-speed internet throughout the United States led to a sea change in the media industry, with consumer preferences shifting from traditional physical media - i.e., books, DVDs, and CDs - to digital streaming and download services such as Netflix, Kindle, and iTunes. Indeed, from 2014 through 2018, global physical media sales declined by a staggering 48%, dropping from $25.2 billion in 2014 to $13.1 billion in 2018. *Id.* at ¶ 20. Defendant Anderson saw the writing on the wall, as described in an October 18, 2010 article in the Knoxville News Sentinel entitled "Entrepreneur seeks new channels as media goes digital":

It's an irony of the media business these days and part of Charlie Anderson's evolution as an entrepreneur that he couldn't find a way to distribute magazines profitably, but he can make money selling subscriptions to them online.  As books, magazines, music and movies are delivered to consumers in a myriad of new digital ways, no one, perhaps, is grappling more with determining how to bridge the revenue gap than the CEO of the company that distributes entertainment media to every Walmart and Sam's Club in the United States and Canada, as well as Army and Air Force bases around the world. . . .

CD sales are declining rapidly as more listeners download single songs onto iPods, smartphones and to their computers, more often than not for free. The loss of revenue is being felt by nearly everyone connected to the industry . . . .

The stakes are higher than just the survival of his own business, Anderson warns.

"The rate of decline of physical music is happening so much quicker than the rate of increase in digital music that if the trend doesn't change within three years the entire music industry could go away," says Anderson, whose many business interests include Liquid Digital Media, which serves as Walmart's e-commerce music site.

That's why Anderson, described nearly universally as quiet and unassuming, broke what he says was a 17-year media silence this summer by doing an interview with Billboard magazine to outline five steps he believes the industry should take to extend the life of the CD.

His suggestions, he says, are meant to create a conversation. "Whoever you talk to in the music business today, they will all say, 'We don't have the answer. We are looking for new revenue streams and new ways to do business, and we also recognize the model we have today is headed in the wrong direction,'" he says. . . .

Anderson says he doesn't know how many companies the family owns currently, but estimates they've bought, sold and kept at least 150. . . .

"So we may evolve into a company that is less a pick, pack and delivery company and more of an in-store execution company. We are doing programs like that as we speak."

Complaint at ¶ 21.

The evolution described by Defendant Anderson involved the eventual segregation and sale of Anderson Media's physical media distribution entity ANConnect, with the sale proceeds funneled up to other Anderson Media entities, leaving ANConnect an empty shell with no ability to pay its creditors. *Id.* at ¶ 22. The process began in earnest in September 2012, when Anderson Merchandisers, LP (the entity responsible for physical media distribution) was converted into Anderson Merchandisers, LLC, with Anderson Media Corporation as its sole member. *Id.* at ¶ 23. On April 29, 2013, Anderson Merchandisers, LLC changed its name to Anconnect, LLC.[3] *Id.* at ¶ 24.

### Anderson Media Offloads ANConnect's Failing Video Assets To Alchemy

In his May 12, 2014 notes, Defendant Lardie wrote that it "appears the only profitable account for ANConnect is Walmart," that he estimated it would take at least three years to recoup ANConnect's losses from a contract shortfall with Dreamworks, and that ANConnect should "stop chasing movie content" because this aspect of its business causes "time and resources [to be] wasted." *Id.* at ¶ 25. By December 2014, Anderson Media's top priority was to "[c]ut ANconnect expenses ASAP . . . [b]ecause of soft sales trends and higher expenses than expected." *Id.* at ¶ 26. An integral part of Anderson Media's plan to "cut ANconnect expenses ASAP" was to offload its rapidly dying video business to Alchemy for an amount that far exceeded the business's true value. *Id.* at ¶ 27.

In a Term Sheet dated February 11, 2015, Millennium Entertainment, LLC (now known as Alchemy) expressed the intent to purchase ANConnect's "US video and digital distribution

---

[3]     ANConnect is referred to in the record with varying forms of capitalization (e.g., ANConnect, Anconnect, ANconnect, ANCONNECT). While the April 29, 2013 Certificate of Amendment filed with the Texas Secretary of State uses "Anconnect," "ANConnect" is the most frequently used and is accordingly used elsewhere herein.

business" and to assume "certain specified liabilities and obligations" of ANConnect, in exchange for "a multiple of 4 times estimated Proforma EBITDA of the Physical Business and 6 times estimated Proforma EBITDA of the Digital Business." *Id.* at ¶ 28. ANConnect and Alchemy executed an Asset Purchase Agreement dated May 7, 2015 (the "APA"). *Id.* at ¶ 29. The APA defines the "Business" purchased by Alchemy as ANConnect's "home video and digital distribution for motion pictures and other audiovisual media in and throughout the United States of America and its territories and protectorates, excluding, for clarity, music, including music videos, and any in-store merchandising services performed by Anderson Merchandisers, LLC." *Id.*

The APA sets forth an aggregate purchase price for the Purchased Assets of $37,637,347, consisting of (a) $35,893,147 allocated to the physical segment of the Business, and (b) $1,744,200 for ANConnect's 51% membership interest in Anderson Digital. *Id.* at ¶ 30. Alchemy also agreed to assume certain liabilities of ANConnect, including, inter alia: (i) liabilities related to content suppliers' contracts, inventory sales, and personnel; (ii) amounts due to content owners; and (iii) accounts payable to wholesale suppliers. *Id.* at ¶ 31. Closing on the ANConnect Transaction occurred on July 9, 2015 (the "Closing"). *Id.* at ¶ 32. The cash payments made by Alchemy in connection with the Closing totaled $29,888,124.40, and the liabilities assumed by Alchemy exceeded $16 million. *Id.* at ¶ 33.

As alleged in detail by the Companion Avoidance Action, the ANConnect Transaction is avoidable as a constructive and actual fraudulent transfer. *Id.* at ¶ 34. ANConnect knew that Alchemy failed to receive reasonably equivalent value in the ANConnect transaction, as it internally described the business as "immediately and forever upside down." *Id.* at ¶ 35. The

Companion Avoidance Action seeks damages from ANConnect and others in excess of $50 million.  *Id.* at ¶ 36.

### <u>Anderson Media Offloads ANConnect's Remaining Lines of Business</u>

On April 29, 2016, ANConnect announced that it had sold its retail book distribution business to Readerlink Distribution Services, LLC.  *Id.* at ¶ 37.  As with the sale of ANConnect's video assets to Alchemy, physical book merchandising services for stores previously supplied by ANConnect were to continue to be provided by Anderson Merchandisers.  *Id.*  In the aftermath of the sale, ANConnect announced that it was laying off 172 of its 230 Amarillo, Texas-based employees.  *Id.*

On July 8, 2016, ANConnect announced that it had sold its retail music assets and business to Alliance Entertainment Holding Corporation.  *Id.* at ¶ 38.  The deal was described by Billboard as "a move that will send shockwaves through what's left of the U.S. physical-music sector."  *Id.*  As with the sale of ANConnect's video and book assets, physical product merchandising services for stores previously supplied by ANConnect were to continue to be provided by Anderson Merchandisers.  *Id.*

### <u>Alchemy Asserts Counterclaims Against ANConnect</u>

On February 17, 2016, ANConnect and Anderson Merchandisers filed a complaint against Alchemy in the Superior Court of Delaware (the "Delaware State Court Action"), alleging that Alchemy owed them for post-closing adjustments and certain other payments under the APA, as well as compensation for various transition and merchandising services.  *Id.* at ¶ 39.  ANConnect's Complaint admits that it collected receivables on Alchemy's behalf yet failed to remit those collections to Alchemy based on a so-called "equitable setoff" that does not exist.  *Id.* at ¶ 40.

In this regard, ANConnect conceded: "[u]nder the Transition Services Agreement, ANConnect has collected receivables from Walmart/Sam's Club, Best Buy, and Ingram on behalf of Alchemy," but "has withheld $6,047,325 [of those receivables] as an equitable setoff" for amounts allegedly owed to ANConnect under the APA and other ancillary agreements.  *Id.* at ¶ 41.  ANConnect's improper withholding of more than $6,047,325.00 in violation of Section 2.06(b)(iv) of the APA and Exhibit B to the Transition Services Agreement resulted in a decrease in working capital, service disruption with key vendors, a decay in relations with content partners, and delivery snafus with Alchemy's key retail partners.  *Id.* at ¶ 42.  Due to ANConnect's wrongful withholding of receivables, Alchemy was required to use third-party financing otherwise budgeted for funding growth initiatives (including ongoing film acquisition investments).  *Id.* at ¶ 43.

On April 11, 2016, Alchemy filed an Answer, Affirmative Defenses, and Counterclaims in the Delaware State Court Action, denying liability and asserting counterclaims (the "Counterclaims") against ANConnect for breach of the APA and ancillary documents, including a claim for ANConnect's wrongful withholding of more than $6 million in receivables which ANConnect admitted it owed.  *Id.* at ¶ 44.  On May 11, 2016, ANConnect filed an Answer and Affirmative Defenses to Alchemy's Counterclaims in which it again admitted to having withheld more than $6 million on account of receivables collected by ANConnect for Alchemy's benefit. *Id.* at ¶ 45.  Discovery obtained by the Trustee in the Companion Avoidance Action establishes that ANConnect actually withheld in excess of $8 million of receivables due to Alchemy.  *Id.* at ¶ 46.

Alchemy is accordingly a creditor of ANConnect for purposes of the Uniform Fraudulent Transfer Act, which defines a "creditor" as "a person who has a claim" and a "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* at ¶ 47.  Alchemy is also a creditor of ANConnect by virtue of asserting claims against it in the Companion Avoidance Action.  *Id.* at ¶ 48.

**ANConnect Funnels Money To Affiliates To Frustrate Payment On Alchemy's Claims**

In June 2016, while ANConnect was liquidating its assets and winding down operations and just months after creditor Alchemy asserted the Counterclaims, ANConnect transferred $10 million to Anderson Media as an equity distribution (the "June 2016 AM Transfer").  *Id.* at ¶ 49. ANConnect also transferred $1,096,320 to AMS in June 2016 (the "June 2016 AMS Transfer"). *Id.* at ¶ 50.  In August 2016, ANConnect transferred an additional $5 million to Anderson Media as an equity distribution (the "August 2016 Transfer").  *Id.* at ¶ 51.

In an internal analysis emailed on December 13, 2016 from Defendant Taylor to Defendant Maier and others, ANConnect reports having made a total of $23.8 million in equity distributions to Anderson Media in the wake of the sales of its video, music, and book businesses—thereby establishing that it transferred an additional $8.8 million to Anderson Media (the "Additional Transfer") over and above the June and August 2016 transfers.  *Id.* at ¶ 52.  The Additional Transfer, the June 2016 AM Transfer, the June 2016 AMS Transfer and the August 2016 Transfer are collectively referred to in the Complaint as the "Fraudulent Transfers."  *Id.*

The Fraudulent Transfers were conceived and executed by the Director/Officer Defendants for the benefit of Anderson Media and AMS, and their shareholders, including the Director/Officer Defendants themselves.  *Id.* at ¶ 53.  At the time ANConnect made the Fraudulent Transfers, Alchemy was a creditor of ANConnect and had asserted claims against it in the Delaware State Court Action.  *Id.* at ¶ 54.  ANConnect made the Fraudulent Transfers with actual knowledge of Alchemy's creditor status and claims against it and, upon information and belief, made the

Fraudulent Transfers with the intent to hinder, delay, or defraud Alchemy and prevent it from recovering on both the already asserted counterclaims and claims which it expected Alchemy to raise in the future. *Id.* at ¶ 55. Additionally, ANConnect made the Fraudulent Transfers without making an appropriate reserve to account for Alchemy's claims. *Id.* at ¶ 56. Of course, ANConnect received no value for the Fraudulent Transfers because they represent payments made on account of equity interests. *Id.* at ¶ 57.

At the time ANConnect made the Fraudulent Transfers, it was insolvent and inadequately capitalized, or alternatively, rendered insolvent and inadequately capitalized by the Fraudulent Transfers. *Id.* at ¶ 58. The Fraudulent Transfers—made in connection with Defendants' wind-down of ANConnect's operations—rendered ANConnect an empty shell with no assets to satisfy creditor claims including those of Alchemy. *Id.* at ¶ 59. An internal ANConnect balance sheet as of September 30, 2016 reports that ANConnect's liabilities exceeded its assets by $7.2 million. *Id.* at ¶ 60. When the improper $8 million setoff of receivables due Alchemy is reversed, ANConnect's admitted liabilities exceeded its assets by more than $15 million. *Id.*

The Fraudulent Transfers were made in connection with ANConnect's liquidation of its business. *Id.* at ¶ 61. ANConnect reported substantial operating losses and negative EBITDA from 2014-2016, including a net loss of $4.37 million for its fiscal year ending October 3, 2014, and negative rolling twelve-month EBITDA of $9.6 million as of 10/31/14, $16.9 million as of 1/30/15, and $7.8 million as of 5/29/15. *Id.* at ¶ 62. ANConnect concealed the Fraudulent Transfers from its creditors. *Id.* at ¶ 63. Anderson Media and ANConnect are privately held businesses with nonpublic finances. *Id.* at ¶ 64. As such, the Fraudulent Transfers were not disclosed to and were concealed from ANConnect's creditors, and the Trustee did not discover, and could not have discovered, the existence of the Fraudulent Transfers until ANConnect made a

document production in the Companion Avoidance Action in March 2021, which, for the first time, disclosed the Fraudulent Transfers. *Id.* at ¶ 65.

**The Trustee Commences the Instant Adversary Proceeding**

The Trustee commenced this adversary proceeding on December 29, 2021. The Complaint asserts claims for avoidance and recovery of the Fraudulent Transfers against ANConnect, Anderson Media, and AMS (Count I), breach of fiduciary duty against the Director/Officer Defendants (Count II), and aiding and abetting breach of fiduciary duty against the Director/Officer Defendants (Count III).

## IV.    MOTION TO DISMISS STANDARD

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted). A complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but rather "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Consistent with this lenient standard, "[g]ranting a motion to dismiss is a 'disfavored' practice, and the court should grant the motion only if it finds that the plaintiff cannot prove any set of facts upon which relief may be granted." *In re OODC, LLC*, 321 B.R. 128, 134 (Bankr. D. Del. 2005).

Claims for actual fraudulent transfer are generally subject to Federal Rule of Civil Procedure 9(b), applicable here by Federal Rule of Bankruptcy Procedure 7009, which states that

"[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  "[T]he requirement of particularity does not require 'an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated . . . the alleged fraud and reasonably believes that a wrong has occurred.'" *Household Int'l, Inc. v. Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369, 373 (D. Del. 2003) (citations omitted) (alteration in original).  "It is not a defendant's fraudulent intent that must be pled with particularity, but the circumstances constituting fraud."  *In re Charys Holding Co.*, 2010 WL 2774852, at *3 (Bankr. D. Del. July 14, 2010).

While "allegations of 'date, place or time' fulfill these functions, . . . nothing in the rule requires them," and thus "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557.  Moreover, it is well-settled that "[a] bankruptcy trustee, as a third party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud."  *In re Am. Bus. Fin. Servs., Inc.*, 384 B.R. 80, 85 (Bankr. D. Del. 2008); *see also In re Fedders N. Am., Inc.*, 405 B.R. 527, 544 (Bankr. D. Del. 2009).  Indeed, "'To state a claim for fraud, . . . all the plaintiff need do is inform the defendant of the particular conduct which is alleged to have been fraudulent.'"  *In re UD Dissolution Corp.*, 629 B.R. 11, 30 (Bankr. D. Del. 2021) (citation omitted).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."  *In re Student Fin. Corp.*, 335 B.R. 539, 546 (D. Del. 2005).  The plaintiff is not required to anticipate, overcome, or "plead around" affirmative defenses in the complaint.  *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014) (citing *In re Adams*

13

*Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004)); *see also In re DVI, Inc.*, 2008 WL 4239120, at *11 (Bankr. D. Del. Sept. 16, 2008) ("An affirmative defense with disputed facts is not a proper basis to dismiss a complaint.").

## V.   ARGUMENT

### A.   The Trustee's Actual Fraudulent Transfer Claims Are Well-Pled and More Than Sufficient to Survive Defendants' Facial Attack.

#### 1.   There Is No Need to Decide Which State's Law Governs the Fraudulent Transfer Claims Because UFTA Applies in Both Delaware and Texas.

Defendants posit that Texas law applies to the Trustee's fraudulent transfer claims, both for statute of limitations/repose and for substantive purposes.  With respect to the former, Defendants argue that "the Delaware borrowing statute requires Delaware court to enforce the shorter of the limitations period prescribed by Delaware law and the limitations period of the state in which the claim arose."  *See* Defendants' Br. (ECF No. 10) at p. 10, n. 10 (citing 10 Del. C. § 8121).  Defendants argue further that, because Texas has the "most significant relationship" to the Trustee's claims, Texas law applies both substantively and for purposes of the borrowing statute. Defendants' arguments fail for four reasons, but it is unnecessary for the Court to make a choice of law determination now because Delaware and Texas have adopted substantively identical versions of the Uniform Fraudulent Transfer Act.

First, Delaware's borrowing statute, which provides an exception to the general rule that the forum state's statute of limitations applies, is by its own terms inapplicable against Delaware residents such as the Debtors.  *See* 10 Del. C. § 8121 ("Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.").  As courts have consistently recognized, the Chapter 7

14

Trustee "stands in the shoes of the debtor."[4]  *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989).  The Debtors were Delaware entities at the time the causes of action accrued, and thus the Delaware statute of limitations should apply to the Trustee, who now brings these claims standing in the Debtors' shoes.  *See, e.g., WaveDivision Holdings, LLC v. Highland Capital Mgmt. L.P.*, 2011 WL 13175837, at *8 (Del. Super. Aug. 7, 2012) (applying Delaware's three-year statute of limitations to tortious interference claim brought by Delaware LLC rather than Texas's two-year statute).

Second, Delaware's borrowing statute does not apply unless the purportedly applicable out-of-state limitations period is "shorter" than that provided by Delaware law.  10 Del. C. § 8121. As discussed in greater detail below, Texas and Delaware apply the same statute of repose/limitations for actual fraudulent transfer claims, which under the law of both jurisdictions must be brought "within four years after the transfer was made or the obligation was incurred, or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  *See* 6 Del. Code Ann. § 1309(1); Tex. Bus. & Com. Code Ann. § 24.010(a)(1).  Accordingly, the borrowing statute has no applicability here.

Third, Texas does not have the "most significant relationship" with the Trustee's claims, both for purpose of the borrowing statute and the law applicable to the underlying substantive fraudulent transfer claims.  *See, e.g., In re Mervyn's Holdings, LLC*, 426 B.R. 488, 496 n.6 (Bankr. D. Del. 2010) ("Since the Delaware bankruptcy court has jurisdiction over this matter, the Court

---

[4]      The Trustee's fraudulent transfer claims under state law are property of the estate under 11 U.S.C. § 541 and the Trustee therefore has authority to pursue them on the Debtors' behalf.  The reference in the complaint to § 544 is mistaken, as the Trustee has claims in his own right and need not step into the shoes of another creditor.  *See* 6 Del. Code §§ 1304 (providing standard for determining a whether a transfer is fraudulent), 1307 (providing that a fraudulent transfer may be avoided and its value recovered from transferees); *accord* Tex. Bus. & Com. Code §§ 24.005, 24.008.

should apply the 'most significant relationship' choice of law standard to determine which state law applies to the fraudulent transfer claim.").

When properly considered in light of the facts pleaded in the Complaint (and those subject to judicial notice on this Court's docket), the balance of the "most significant relationship" factors weigh in favor of the application of Delaware law: the Debtors are Delaware entities and were thus injured in Delaware; the bulk of the Fraudulent Transfers at issue were made to Anderson Media, which is itself a Delaware corporation; and the Fraudulent Transfers were made to escape liability for counterclaims brought by the Debtors in Delaware state court. *See In re FAH Liquidating Corp.*, 572 B.R. 117, 129 (Bankr. D. Del. 2017) (listing the contacts to be considered in applying the most significant relationship test: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." (quoting Restatement (Second) of Conflict of Laws § 145)). Indeed, the only connection which this case has to Texas is the state of incorporation of Defendant ANConnect, which the Complaint alleges was dominated and controlled by its Delaware-incorporated parent, Anderson Media.

Finally, this Court need not decide which state's law applies because Texas and Delaware have each adopted the Uniform Fraudulent Transfer Act (generally, "UFTA," as enacted in Texas, "TUFTA," and as enacted in Delaware, "DUFTA"). Defendants' motion should be denied under the law of either jurisdiction. *See, e.g., In re Mervyn's Holdings, LLC*, 426 B.R. 488 at 496 n.6 (declining to decide which of three states' laws applied to fraudulent transfer claims when they had all "similarly adopted the UFTA, and therefore the result is the same regardless of the choice of law issue"); *In re Physiotherapy Holdings, Inc.*, No. 13-12965(KG), 2017 WL 5163515, at *2

16

(Bankr. D. Del. Nov. 6, 2017) (citing *In re Mercedes–Benz Tele Aid Contract Litigation*, 257 F.R.D. 46, 57–58 (D.N.J. 2009) for the contention that a "court must make a choice of law determination only if the determination will make a difference in the outcome")); *Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010) ("the Third Circuit, as well as other federal and state courts within Delaware, have concluded that Delaware's choice of law rules require that an actual conflict exist prior to engaging in a complete conflict of laws analysis"). Moreover, "[m]any Courts have held that a motion to dismiss is not the appropriate time to raise the choice of law question because the decision may require a full factual record." *In re Physiotherapy Holdings, Inc.*, 2017 WL 5163515, at *2 (collecting cases).

>    **2.    The Complaint States Claims to Avoid and Recover Defendants' Actually Fraudulent Transfers.**

Under both DUFTA and TUFTA, transfers are avoidable as actually fraudulent when they were made with "actual intent to hinder, delay, or defraud any creditor of the debtor." *See* 6 Del. C. § 1304(a)(1); Tex. Bus. & Com. Code Ann. § 24.005(a)(1).[5] Because parties to an actual fraudulent transfer rarely acknowledge their fraudulent intent, courts in both jurisdictions rely on "badges of fraud" as circumstantial proof of actual fraudulent intent. *See, e.g., ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 370 (S.D. Tex. 2008) (applying DUFTA: "Actual fraudulent intent is rarely susceptible to direct proof; therefore, the requisite intent may be proved circumstantially by presenting evidence of certain 'badges of fraud' that may cumulatively give rise to an inference of intent to hinder, delay, or defraud."); *Jones v. Dyna Drill Techs., LLC*, No.

---

[5]    Defendants do not dispute that the Complaint adequately alleges the other elements of an actual fraudulent transfer, i.e., that ANConnect made transfers and was a creditor of Alchemy for purposes of the UFTA. *See* Complaint at ¶¶ 47-52.

01-16-01008-CV, 2018 WL 4016413, at *5 (Tex. App. Aug. 23, 2018) (citing the above-quoted language from *ASARCO* as applicable to TUFTA).

The badges of fraud include, but are not limited to, those set forth in the body of the UFTA:

> In determining actual intent [for the purposes of the actual fraud provision], consideration may be given, among other factors to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code § 24.005(b); *accord* 6 Del. Code Ann. § 1304(b) (enumerating the same badges of fraud, with the exception of badge (3), which in Delaware reads "[t]he transfer or obligation was disclosed or concealed").

"A court may, of course, consider factors other than the traditional badges of fraud in an analysis of fraudulent intent," such as, for example, if the "natural consequence" of the transfer is that the debtor's creditors were hindered, delayed, or defrauded. *In re Tribune Co.*, 464 B.R. 126, 162 (Bank. D. Del. 2011). Ultimately, the determination of whether a transfer was made with fraudulent intent is a question of fact rarely susceptible to resolution at the motion to dismiss stage. *See Flores v. Robinson Roofing & Const. Co.*, 161 S.W.3d 750, 754–55 (Tex. App. 2005) ("Intent [under TUFTA] is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. The

question of whether a [transferor] conveyed property with the intent to defraud creditors is 'ordinarily a question for the jury or the court passing on the fact.'" (citations omitted)); *AJZN, Inc. v. Yu*, No. CV 13-149 GMS, 2015 WL 331937, at *14 (D. Del. Jan. 26, 2015) ("[i]ntent is a question of fact").

Here, the Trustee alleges that the Fraudulent Transfers were intended to hinder, delay, or defraud creditors because they were: made to insiders[6] of ANConnect for no consideration (badges b(1) and (8)), Complaint at ¶¶ 8-10, 19, 57; concealed (badge (b)(2)), *id.* at ¶¶ 63, 65; made in the months following Alchemy filing substantial counterclaims against ANConnect (badges (b)(4) and (b)(10)), *id.* at ¶¶ 44-49; consisted of substantially all of ANConnect's assets, rendering ANConnect insolvent (badges b(5) and (10)), *id.* at ¶¶ 58-61; and constituted the removal of ANConnect's assets to avoid the claims of creditors (badge b(7)), *id.* at ¶¶ 55, 59, 60, 65. The Complaint thus alleges a fraudulent motive and a confluence of at least eight badges of fraud—*i.e.*, insider status, lack of reasonably equivalent value, insolvency, concealment, proximity to the institution of a legal claim (i.e., a substantial debt), transfer of substantially all assets, and the removal of assets.

"Although the presence of a single factor, i.e. badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *In re Our Alchemy, LLC*, No. 16-11596 (KG), 2019 WL 4447545, at *6 (Bankr. D. Del. Sept. 16, 2019); *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008) (under TUFTA, "[n]ot all, or even a majority, of the 'badges of fraud' must exist to find actual

---

[6]    Defendants do not (and cannot) dispute that Anderson Media and AMS are insiders of ANConnect under the UFTA. *See* Tex. Bus. & Com. Code §§ 24.002(1), (7); 6 Del. C. §§ 1301(1), (7).

fraud. Indeed, '[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.' (quoted reference omitted)).

Given the badges of fraud alleged and the facts surrounding the Fraudulent Transfers, the Trustee has adequately alleged actual fraudulent intent, and Defendants' motion to dismiss Count I should be denied. *See, e.g., In re Heritage Org., LLC*, No. 04-35574-BJH-11, 2008 WL 5215688, at *5–8 (Bankr. N.D. Tex. Dec. 12, 2008) ("Given the evidence of at least three badges of fraud, this Court concludes that the Trustee has raised . . . an issue of fact [sufficient to preclude summary judgment]."); *In re Our* Alchemy, LLC, 2019 WL 4447545, at *7 ("Four badges of fraud are certainly enough for an actual fraudulent transfer claim to survive a Rule 12(b)(6) motion."); *In re Boyd*, No. ADV 12-05107, 2012 WL 5199141, at *9 (Bankr. W.D. Tex. Oct. 22, 2012) ("Proof of four to five badges of fraud is sufficient to establish actual fraud.").

### 3.    The Trustee's Fraudulent Transfer Claims are Not Time Barred.

Texas and Delaware apply the same statute of repose/limitations for actual fraudulent transfer claims, which under the law of both jurisdictions must be brought "within 4 years after the transfer was made or the obligation was incurred, or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." *Compare* 6 Del. Code Ann. § 1309(1) (quoted supra), *with* Tex. Bus. & Com. Code Ann. § 24.010(a)(1) (stating that a claim for actual fraudulent transfer must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant").

As set forth in detail above, the Trustee's actual fraudulent transfer claims are well-pleaded and are governed by the statutory language which allows claims to be brought within one year after the transfer was or could reasonably have been discovered, sometimes referred to in caselaw

as the "discovery rule."[7]  Under the law of both Texas and Delaware, that one-year period does

not begin to run until the plaintiff knew of or could reasonably have discovered both the transfer

and its fraudulent nature.  *See, e.g., Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585,

589–90 (5th Cir. 2020) (holding under TUFTA "that the one-year period begins to run when the

plaintiff knew of or could reasonably have discovered the transfer *and* its fraudulent nature"

(emphasis in original)); *accord JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1239-40

(Del. Ch. 2019) ("'it would be legally absurd and unjust to interpret the discovery rule to preclude

claims under the UFTA if plaintiffs were never aware they held a potential claim'" (quoted

reference omitted)).

Due to its inherently fact sensitive nature, application of the UFTA's one-year discovery

rule is generally inappropriate for resolution at the motion to dismiss stage.  *In re Northstar*

*Offshore Grp., LLC*, 616 B.R. 695, 736–37 (Bankr. S.D. Tex. 2020); *Rotstain v. Trustmark Nat'l*

*Bank*, No. 3:09-CV-2384-N, 2015 WL 13034513, at *4 (N.D. Tex. Apr. 21, 2015); *Janvey v. Willis*

*of Colorado Inc.*, No. 3:13-CV-3980-N, 2014 WL 12670763, at *6 (N.D. Tex. Dec. 5, 2014)

(holding that "[a]pplication of the TUFTA 'discovery rule' is a factual question generally

inappropriate for resolution on a motion to dismiss" and that the allegation that "TUFTA claims

were inherently undiscoverable" was sufficient to preclude dismissal); *Duran v. Henderson*, 71

S.W.3d 833, 839–40 (Tex. App. 2002) ("Ordinarily, what constitutes reasonable diligence to

discover fraud is a question of fact for the jury. . . . And registration of a fraudulent conveyance at

a certain date in public records is merely one circumstance bearing on the creditor's actual or

---

[7]     Defendants erroneously seek to convert the Trustee's actual fraudulent transfer claims (to which the one-year tolling under the UFTA's discovery rule is applicable) into constructive fraudulent transfer claims not subject to such tolling.  The Trustee as plaintiff is the master of his claims, and Defendants' effort to rewrite them must be rejected out of hand.

presumed knowledge." (citations omitted)); *In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611, at *16 (D. Del. Nov. 15, 2005) (denying motion to dismiss fraudulent transfer claims under DUFTA as "inappropriate at the pleading stage" because "there is a factual issue concerning when the payments were or could reasonably have been discovered"); *In re Nat'l Serv. Indus., Inc.*, No. AP 14-50377 (MFW), 2015 WL 3827003, at *8 (Bankr. D. Del. June 19, 2015) (declining to dismiss DUFTA claims at the motion to dismiss stage and citing, *inter alia*, *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301–02 (3d Cir. 2001) ("because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion.")).

The Trustee's Complaint plausibly and unequivocally alleges that "ANConnect concealed the Fraudulent Transfers from its creditors," that "Anderson Media and ANConnect are privately held businesses with nonpublic finances," that the "Fraudulent Transfers were not disclosed to and were concealed from ANConnect's creditors," and that "the Trustee did not discover, and could not have discovered, the existence of the Fraudulent Transfers until ANConnect made a document production in the Companion Avoidance Action in March 2021, which, for the first time, disclosed the Fraudulent Transfers." Complaint at ¶¶ 63-65. This Court must accept these facts and all reasonable inferences drawable therefrom as true, and they compel denial of Defendants' motion.

Defendants' argument that the Trustee was on inquiry notice of the Fraudulent Transfers because he "should have known of the potential that ANConnect would transfer the proceeds ANConnect generated from the sale of its material business lines in 2015 and 2016," Defendants' Br. at pp. 13-14, is similarly meritless. First, the argument stems from a misconstruction of the allegations of the Complaint, specifically the notion that the Trustee knew throughout the events described in the Complaint that ANConnect was funneling sale proceeds to its affiliates to frustrate

creditor claims. *See id.* at p. 14. This is directly contradictory to the actual allegations of the Complaint, which plainly establish that the Fraudulent Transfers were concealed and that the Trustee did not and could not have learned of them until ANConnect's March 2021 production in the Companion Avoidance Action. Complaint at ¶ 65.

Second, the notion that knowledge gleaned from the newspaper article cited in the Complaint and ANConnect's asset sales should have alerted the Trustee that ANConnect's fiduciaries would breach their duties to creditors by making fraudulent transfers of substantially all of ANConnect's assets to its parents for zero consideration is demonstrably false and contradicts the motion to dismiss standard, which requires all inferences to be drawn in favor of the non-moving party.[8] *See, e.g.,* Complaint at ¶ 21 (newspaper article discussing Defendant Anderson's plans to evolve the company to adapt to the shifting media landscape, supporting the inference that ANConnect would use sale proceeds to change its business model rather than make fraudulent transfers to its affiliates).

---

[8]     Defendants' reliance on *Zenner v. Lone Star Striping & Paving, L.L.C.*, 371 S.W.3d 311 (Tex. App. 2012) is misplaced. *Zenner* held that a creditor which already had a judgment against a trust holding a single asset (a family beach house) should have conducted post judgment discovery to inquire as to the disposition of proceeds from the trust's sale of the house. This is markedly distinguishable from the instant case, as the Trustee has no judgment against ANConnect, which is a business entity, not a single asset family real estate trust. Businesses frequently change their strategies to remain competitive, whereas the trust in *Zenner*, which existed solely to hold its beneficiary's beach house, would necessarily have had to distribute sale proceeds upon the sale of the house. Moreover, ANConnect was actively fighting the counterclaim asserted by Alchemy in the state court litigation, asserted a claim in the Alchemy bankruptcy, and continues to litigate the Companion Avoidance Action, behavior which leads to the inference that it retained, rather than fraudulently transferred, its assets. Finally, while *Zenner* involved a reversal on appeal, it was decided after trial and thus after both parties had ample opportunity to develop and present the factual basis for their claims. It is thus inapposite to the instant motion given that "[a]pplication of the TUFTA 'discovery rule' is a factual question generally inappropriate for resolution on a motion to dismiss." *Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2014 WL 12572881, at *10 (N.D. Tex. Dec. 17, 2014) (holding that, "[b]y pleading the TUFTA discovery rule, Plaintiffs escape dismissal based on limitations" (citation to complaint omitted)).

*In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003, is instructive.  In that case, the Court declined to dismiss actual fraudulent transfer claims as time barred under DUFTA because "[t]he Complaint contains facts that are suggestive of the difficulty of reasonable discovery by a creditor of any fraud committed by the . . . Defendants," namely that those defendants were the "shareholders and board members of the privately held [transferor]," which the defendants "secretly looted."  *Id.* at *8.  Under such facts, which are substantively identical to those alleged here, the Court held that, "[b]ecause the Debtor[/Transferor] was not a public company, its board resolutions and financial records were not available to creditors.  Thus, from the face of the Complaint the Court cannot conclude that the equitable tolling provision does not apply . . . [and] it would be inappropriate to dismiss the Trustee's actually fraudulent transfer claims at this point." *Id.*

Here, as in *In re Nat'l Serv. Indus., Inc.*, due to the privately-held nature of the Defendants, the Trustee reasonably had no knowledge of the challenged transfers until he received the discovery in the Companion Avoidance Action which essentially disclosed them.  *See also In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 736–37 (Bankr. S.D. Tex. 2020) (holding under TUFTA that a complaint's allegation that creditors "had no way of knowing" about a fraudulent transaction was sufficient to overcome a motion to dismiss); *Klein v. Cornelius*, 786 F.3d 1310, 1322 (10th Cir. 2015) (denying summary judgment based on TUFTA's discovery rule because "the statute of limitation is tolled under the UFTA for as long as the entity is dominated or controlled by the wrongdoers").

Simply stated, there is no evidence before the Court to suggest as a matter of law that Plaintiff could reasonably have discovered both the transfers and their fraudulent intent sooner

than one year before the Complaint in this action was filed.  To the contrary, the Complaint alleges

the opposite, and Defendants' motion should be denied.

**B.    Defendants' Motion to Dismiss the Trustee's Breach of Fiduciary Duty and Aiding and Abetting Claims is Without Merit.**

     **1.    Defendants Fail to Establish That The Trustee's Claims Are Time Barred.[9]**

Under both Delaware and Texas law, there are three bases for tolling the statute of

limitations: (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable

tolling following a breach of fiduciary duties.  *Carr v. New Enterprise Assocs., Inc.,* 2018 WL

1472336, at *8 (Del. Ch. 2018); *Est. of Erwin*, No. 13-20-00301-CV, 2021 WL 6129130, at *5-6

(Tex. App. Dec. 29, 2021).  The inherently unknowable injuries doctrine is Delaware's discovery

rule, under which "the statute begins to run 'upon the discovery of facts constituting the basis of

the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and

prudence on inquiry which, if pursued, would lead to the discovery of such facts.'"  *In re AMC*

*Investors, LLC.*, 524 B.R. 62, 80-81 (Bankr. D. Del. 2015); *accord Erwin*, 2021 WL 6129130, at

*5 (holding that the "discovery rule defers the accrual of the cause of action until the injury was

or could have been reasonably discovered" (quotation marks and citation omitted)).  Fraudulent

concealment means that the defendant took affirmative steps to prevent a plaintiff from learning

facts or made misrepresentations to "'put the plaintiff off the trail of inquiry.'"  *Certainteed v.*

---

[9]    Defendants acknowledge that Texas law applies to the Trustee's breach of fiduciary duty claims under the internal affairs doctrine because transferor ANConnect is a Texas LLC, yet argue that Delaware's borrowing statute mandates application of Delaware's three-year statute of limitation.  *See* Defendants' Br., ECF No. 10 at pp. 18-19. As to the statute of limitations Defendants are incorrect—Delaware's borrowing statute is inapplicable to Delaware residents such as the Debtors, *see* Section V.A.1, *supra*.  In any event, the Trustee's claim cannot be deemed time barred at this point under the law of either Texas or Delaware, and no choice of law decision needs to be made.

*Celotex Corp.*, 2005 WL 217032, at *8 (Del. Ch. Jan. 24, 2005) (citation omitted); *accord Erwin*, 2021 WL 6129130, at *6.  Under the doctrine of equitable tolling, the statute is tolled "where a plaintiff reasonably relies on the competence and good faith of a fiduciary." *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. CIV.A. 762-N, 2005 WL 1594085, at *19 (Del. Ch. June 29, 2005); *accord Erwin*, 2021 WL 6129130, at *5-6 (holding that, as a variation of the discovery rule and fraudulent concealment doctrines, "a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct" and "silence by [a] fiduciary may be enough to sustain a fraudulent concealment defense").

Regardless of how characterized, one or more of these tolling doctrines apply here, whether Delaware or Texas law is applied.  The Complaint alleges that Defendants, privately held businesses with nonpublic finances and their operators, conspired to make Fraudulent Transfers which "were not disclosed to and were concealed from ANConnect's creditors" and that the Trustee did not discover, and could not have discovered, the existence of the Fraudulent Transfers until ANConnect made a document production in the Companion Avoidance Action in March 2001, which, for the first time, disclosed the Fraudulent Transfers."  Complaint at ¶¶ 63-65.  Thus, whether described as the discovery rule, equitable tolling, or fraudulent concealment, the statute of limitations should be tolled for the Trustee's breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims, for reasons identical to those discussed *supra* in connection with UFTA's discovery rule. *See Duran v. Henderson*, 71 S.W.3d 833, 839–40 (Tex. App. 2002) ("The one year provision of Section 24.010 is similar to the discovery rule applicable to general [tort] claims.").  Simply stated, it was not until the Trustee obtained discovery in the Companion Avoidance Action that he was on notice of and able to seek redress for his claims.

2.   **The Trustee States A Claim For Breach of Fiduciary Duty and Aiding and Abetting Fiduciary Duty, And Defendants' Standing Argument is Specious.**

While the general rule in Texas is that officers and directors owe fiduciary duties only to the company and not its creditors, it is well established that this general rule is not applicable when "there has been prejudice to the creditors." *Petras v. Mole*, No. 3:11-CV-1402-N, 2012 WL 13103200, at *9 (N.D. Tex. May 17, 2012) (citing *Plas-Tex, Inc. v. Jones*, No. 03-99-00286-CV, 2000 WL 632677, at *4 (Tex. App. May 18, 2000)).  Such prejudice arises where, as here, "there has been a fraudulent conveyance, or where there has been a transaction which led to corporate insolvency." *Petras*, 2012 WL 13103200, at *9.  Numerous cases confirm a creditor's right under Texas law to sue its debtor's management for breach of fiduciary duty upon a company's insolvency.  *See Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. CV H-04-2833, 2005 WL 8165022, at *6 (S.D. Tex. Mar. 31, 2005) ("when a corporation is insolvent, a fiduciary relationship arises between the officers and directors of the corporation and its creditors, and creditors may challenge a breach of the duty"); *In re Boyd*, No. ADV 12-05107, 2012 WL 5199141, at *10–11 (Bankr. W.D. Tex. Oct. 22, 2012) ("it is Texas law that when a corporation is insolvent, a fiduciary relationship arises between the officers and directors of the corporation and its creditors, and creditors may challenge a breach of the duty); *In re Kahn*, 533 B.R. 576, 586 (Bankr. W.D. Tex. 2015) (citing *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 477 (Tex. App. 1989) in holding that a "creditor may challenge [a] breach [of fiduciary duty] if the transaction is made to defraud creditors"); *In re Supplement Spot, LLC*, 409 B.R. 187, 203-04 (Bankr. S.D. Tex. 2009) (holding that the president of a Texas LLC owed fiduciary duties to the LLC's creditors upon its insolvency); *In re Draw Another Circle.*, 602 B.R. 878, 901 (Bankr. D. Del. 2019) ("Under Texas law, breach of fiduciary duty claims become actionable by a creditor only when the corporation is insolvent."); *In re Mandel*, No. 10-40219,

27

2011 WL 4599969, at *18 (Bankr. E.D. Tex. Sept. 30, 2011), aff'd in part, vacated in part on other grounds, 578 F. App'x 376 (5th Cir. 2014) (holding under Texas law that "officers and directors of an insolvent corporation owe a fiduciary duty to creditors to assure that creditors get their fair share of the corporation's assets").

The fiduciary duties owed to creditors under Texas law, "include[] the duty to preserve the value of the corporate assets to pay corporate debts without preferring one creditor over another or preferring themselves to the injury of other creditors." *Petras*, 2012 WL 13103200, at *9. As set forth in detail in the Trustee's Complaint, Alchemy was a creditor of ANConnect and was injured when insiders transferred assets to ANConnect affiliates for zero consideration. The Trustee has accordingly alleged a claim of breach of fiduciary duty under Texas law, and Defendants' motion must fail.

Removing any doubt that the Trustee's breach of fiduciary duty and aiding and abetting[10] claims should be allowed to proceed to discovery, another line of cases under Texas law establish that, "when a corporation becomes insolvent and ceases doing business, its assets become a trust fund for the benefit, primarily, of its creditors, and the officers and directors owe a fiduciary duty to the creditors, breach of which gives rise to a cause of action for the creditors against the officers and directors." *White v. Zhou Pei*, 452 S.W.3d 527, 541 (Tex. App. 2014) (citing *Fagan v. La*

---

[10]    The bulk of Defendants' challenge to the Trustee's aiding and abetting fiduciary duty claim discusses the unavailability of aiding and abetting claims under the UFTA, which the Complaint does not purport to bring. Defendants do not, and cannot, argue that aiding and abetting fiduciary duty claims are not legally cognizable. *See, e.g., Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) ("Under Texas law, 'where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.'" (citation omitted)). As set forth in detail herein, the Trustee pleads the existence of fiduciary duties, the breach of fiduciary duties, and the Defendants' active participation in the breach, and the Complaint thus states a claim for aiding and abetting fiduciary duty.

*Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex.Civ.App.-Houston [14th Dist.] 1973, no writ.) (holding that the trust fund doctrine "gives rise to a cause of action against the officers and directors which can be prosecuted directly by the creditors")); *Ramirez Cap. Servs., LLC v. McMahan*, No. 4:21-CV-00241-ALM, 2021 WL 5907791, at *5 (E.D. Tex. Dec. 14, 2021) (holding that the trust fund doctrine creates a breach of fiduciary duty to the creditors the breach of which "gives rise to a cause of action against the officers and directors which can be prosecuted directly by the creditors"); *In re Jackson*, No. 08-41635, 2010 WL 2900998, at *6 (Bankr. E.D. Tex. July 21, 2010) ("under Texas law, officers and directors of an insolvent corporation are trustees of the corporation's assets and have a fiduciary duty to deal fairly with the corporation's creditors by, among other things, preserving the value of the corporate assets").  Should the Court determine that pleading the requirements of the trust fund doctrine is necessary to state a claim for breach of fiduciary duty under Texas law, he has done so.  *See* Complaint at ¶ 79.[11]

---

[11]    Considering the foregoing caselaw, Defendants' lack of standing argument based on Tex. Bus. Orgs. Code § 101.452(1)(1)-(2) is completely misplaced.  The statute is facially applicable only to LLC members who are seeking derivative standing.  *See Elgohary on behalf of Texas Halo Fund I, LLC v. Steakley*, No. 4:17-CV-01534, 2017 WL 5514373, at *7 (S.D. Tex. Oct. 10, 2017) (holding that § 101.452 simply "requires that a ***derivative action*** plaintiff be a member of the entity that he intends to represent" (emphasis added)).  Defendants' argument that a 1991 amendment to the TCBA "effectively eliminated" the trust fund doctrine is similarly without merit, as established by the Trustee's citation to cases post-dating the amendment by more than two decades.

## VII.   CONCLUSION

For the foregoing reasons, the Court should deny the Motion in its entirety.[12]


Dated: February 11, 2022                          Respectfully submitted,

                                                   /s/ John T. Carroll, III

                                                  _____
                                                  John T. Carroll, III (DE Bar No. 4060)
                                                  COZEN O'CONNOR
                                                  1201 North Market Street
                                                  Suite 1001
                                                  Wilmington, DE 19801
                                                  Tel: (302) 295-2028
                                                  Fax: (302) 295-2013
                                                  jcarroll@cozen.com

                                                  -and-

                                                  Steven M. Coren, Esq.
                                                  KAUFMAN, COREN & RESS, P.C.
                                                  Two Commerce Square
                                                  2001 Market Street, Suite 3900
                                                  Philadelphia, PA 19103
                                                  Tel: (215) 735-8700
                                                  Fax: (215) 735-5170
                                                  scoren@kcr-law.com (pro hac vice)

                                                  *Counsel for Plaintiff*
                                                  *George L. Miller, Ch. 7 Trustee*

---

[12]    The Trustee alternatively seeks leave to amend in the event that the Court determines any of his claims are insufficiently stated.  In such event, the Trustee anticipates amending his Complaint to, if necessary, remedy any deficiencies identified by the Court in its ruling on Defendants' Motion.  Granting leave to amend for this purpose is appropriate and accords with the Third Circuit's liberal approach to the amendment of pleadings.  *See In re Total Containment, Inc.*, 335 B.R. 589, 601 (Bankr. E.D. Pa. 2005) (leave to amend, rather than dismissal, is ordinarily appropriate, unless repleading could not correct the defects in the claim).