## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OUR ALCHEMY, LLC, *et al.*,<br><br>                        Debtors. | Chapter 7<br><br>Case No. 16-11596 (JTD)<br>(Jointly Administered) |
| GEORGE L. MILLER in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of OurAlchemy, LLC and Anderson Digital, LLC,<br><br>                        Plaintiff,<br>-against-<br><br>ANDERSON MEDIA CORPORATION; ANCONNECT, LLC; ANDERSON MANAGEMENT SERVICES, INC.; CHARLES C. ANDERSON, JR.; JAY R. MAIER; BILL LARDIE; and CHUCK TAYLOR,<br><br>                        Defendants. | Adversary No. 21-51420 (JTD) |

## REPLY IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE TRUSTEE'S COMPLAINT AND RESPONSE IN OPPOSITION TO THE TRUSTEE'S REQUEST FOR LEAVE TO AMEND

The Defendants,[1] by and through their undersigned counsel, hereby submit this (i) Reply to the Trustee's *Memorandum Of Law In Opposition To Defendants' Motion To Dismiss For Failure To State A Claim* (D.I. 13; the "**Opposition**"); and (ii) response in opposition to the Trustee's request for leave to amend (the "**Reply**"). The Reply is filed pursuant to Rules 9(b),

---

[1]     Terms not otherwise defined herein shall have the meaning given to them in Defendants' Supporting Memorandum. The Statement of Facts set forth in the Defendants' Supporting Memorandum are incorporated by reference into this Reply.

12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure (the "**Federal Rules**"), incorporated herein by Rules 7009 and 7012 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Del. Bankr. L.R. 7007-1, 7007-2, and 7012-1. For the reasons set forth in this Reply and the Memorandum of Law in Support of the Motion to Dismiss filed on January 28, 2022 (D.I. 10) (the "**Defendants' Supporting Memorandum**"), Defendants request that the Motion to Dismiss be granted and that the Court grant such additional and further relief as is just and appropriate.

# TABLE OF CONTENTS

I.  SUMMARY OF THE ARGUMENT ................................................................................. 1

II.  ARGUMENT AND CITATION OF AUTHORITY .......................................................... 2

    A.  The Limitations Period Has Run on All of the Trustee's Claims. ............................... 2

    B.  The Trustee's Constructive Fraudulent Transfer Claim and His § 544
        Avoidance Claim Have Been Abandoned and Should be Dismissed. ........................ 5

    C.  Plaintiff Fails to State A Claim for Actual Fraudulent Transfer. ............................... 6

    D.  The Trustee's Claim for Breach of Fiduciary Duty Should be Dismissed. ................. 8

    E.  The Trustee's Aiding and Abetting Breach of Fiduciary Duty Should be
        Dismissed. ............................................................................................................. 11

III.  THE TRUSTEE'S FOOTNOTE REQUEST FOR LEAVE TO AMEND
      SHOULD BE DENIED .............................................................................................. 13

IV.  CONCLUSION .......................................................................................................... 15

#124098687 v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*,
  714 F.2d 1266 (5th Cir. 1983) ...................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................6

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007)........................................................................................8

*Basic Cap. Mgmt. v. Dynex Cap., Inc.*,
  976 F.3d 585 (5th Cir. 2020) ...................................................................................3, 4

*Bond v. Rosen (In re Wholesale Holdings LLC)*,
  2022 Bankr. LEXIS 346 (Bankr. D. Del. Feb. 9, 2022) .............................................7

*State ex rel. Brady v. Pettinaro Enters.*,
  870 A.2d 513 (Del. Ch. 2005).....................................................................................2

*In re Bridgeport Holdings, Inc.*,
  388 B.R. 548 (Bankr. D. Del. 2008) ...........................................................................3

*Cadle Co. v. Wilson*,
  136 S.W.3d 345 (Tex. Ct. App. 2004) ........................................................................2

*CML V, LLC v. Bax*,
  28 A.3d 1037 (Del. 2011) ..........................................................................................10

*In re Dean Witter P'ship Litig.*,
  Consolidated Civil Action No. 14816, 1998 Del. CH. LEXIS 133 (Del. Ch. July 17, 1998)............................................................................................................2

*Elgohary v. Steakley*,
  Civil Action No. 4:17-cv-01534, 2017 U.S. Dist. LEXIS 190621 (S.D. Tex. Oct. 10, 2017) ..........................................................................................................10

*Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Inv'rs, LLC)*,
  2022 Bankr. LEXIS 203 (Bankr. D. Del. Jan. 27, 2022), a Bankruptcy...................5

*Floyd v. Option Mortg. Corp. (In re Supplement Spot, LLC)*,
    409 B.R. 187 (Bankr. S.D. Tex. 2009) ...................................................................9

*Friedberg v. Barefoot Architect, Inc.*,
    723 Fed. App'x 100 (3d Cir. 2018).......................................................................6

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010).................................................................................14

*Head v. Ascendant Petroleum Holding, LLC*,
    No. 11-18-00151-CV, 2020 Tex. App. LEXIS 6031 (Tex. App.—Eastland,
    July 31, 2020).......................................................................................................10

*Juju, Inc. v. Native Media, LLC*,
    No. 19-402-CFC, 2020 U.S. Dist. 104387 (D. Del. June 15, 2020)........................6

*United States ex rel. Kelly v. Select Specialty Hosp.-Wilmington, Inc.*,
    No. 16-CV-347, 2018 U.S. Dist. LEXIS 53815 (D. Del. Mar. 30, 2018) ...............6

*Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*
    No. 12-cv-2652 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017)...........................14

*Lowe v. L. & Lending, LLC*,
    No. SA-09-CA-1034-H, 2010 U.S. Dist. LEXIS 154555 (W.D. Tex. Sept. 22,
    2010) .......................................................................................................................9

*Medlin v. Wells Fargo Bank, N.A. (In re I.G. Servs., Ltd.)*,
    No. 99-53170-C, 2007 Bankr. LEXIS 3329 (Bankr. W.D. Tex. July 31, 2007) ....11

*In re Merck & Co. Sec., Derivative, & ERISA Litig.*,
    493 F.3d 393 (3d Cir. 2007).................................................................................14

*Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*,
    2019 Bankr. LEXIS 2905 (Bankr. D. Del. Sept. 16, 2019) .............................13, 14

*Miller v. Marcel Dutil the Canam Manac Grp., Inc. (In re Total Containment,
    Inc.)*,
    335 B.R. 589 (Bankr. E.D. Pa. 2005) ...................................................................14

*In re National Services Industries, Inc.*,
    2015 Bankr. LEXIS 2029 (Bankr. Del. June 18, 2015)..........................................4

*Official Comm. of Unsecured Creditors of Schlotzsky's, Inc. v. Grant Thornton,
    L.L.P. (In re Schlotzsky's, Inc.)*,
    351 B.R. 430 (Bankr. W.D. Texas 2006).............................................................12

*Robinson v. Johnson*,
    313 F.3d 128 (3d Cir. 2002)...................................................................................2

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012).................................................................................8

*Smith v. Weinshanker (In re Draw Another Circle)*,
    602 B.R. 878 (Bankr. D. Del. 2019) ..........................................................8, 9, 12

*In re Syntax-Brillian Corp.*,
    573 F. App'x. 154 (3d Cir. 2014) ..................................................................12, 13

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. 2006) ...............................................................................12, 13

*West Fork Advisors, LLC v. SunGard Consulting Servs., LLC*,
    437 S.W.3d 917 (Tex. Ct. App. 2014, pet. denied) ............................................11

*Zenner v. Lone Star Striping Paving, L.L.C.*,
    371 S.W.3d 311 (Tex. Ct. App. 2012) ..................................................................3

## Statutes

11 U.S.C. § 544.......................................................................................................5, 6

Tex. Bus. Orgs. Code § §101.461(b)(2) ................................................................10

Tex. Bus. & Com. Code § 24.005(b)(3)...................................................................7

Tex. Bus. Corp. Act art. 5.14(A)(1).......................................................................11

Tex. Bus. Corp. Act art. 7.12 ...................................................................................9

Tex. Bus. Orgs. Code § 21.551(1) ..........................................................................11

Texas Business Organizations Code section 101.452............................................9, 10

Texas Uniform Fraudulent Transfer Act..............................................................3, 11

## Other Authorities

Federal Rule of Bankruptcy Procedure 2004............................................................4

Federal Rule of Civil Procedure 8 ............................................................................8

Federal Rule of Civil Procedure 9 ...............................................................1, 6, 7, 8

Federal Rule of Civil Procedure 12 ...........................................................1, 2, 3, 8, 14

Federal Rule of Civil Procedure 15 ........................................................................14

iv

I.    **SUMMARY OF THE ARGUMENT**

1.     The Trustee's 2021 Complaint should be dismissed because it is untimely and unsupported. In fact, it is undeniable that the Alleged 2016 Sales Proceeds Transfers occurred outside the applicable statute of limitations/repose. The Trustee's 2021 Complaint admits that each of the Alleged 2016 Sales Proceeds Transfers occurred more than five (5) years before the Trustee filed the Trustee's 2021 Complaint. The Trustee's attempt to invoke the discovery rule to excuse his delay should be rejected because the face of the Trustee's 2021 Complaint cites to facts establishing that these alleged claims were known or reasonably knowable more than one year before the Trustee commenced this Adversary Proceeding. Accordingly, the Court should dismiss each of Trustee's Causes of Action.

2.     Though the Opposition attempts to address the pleading deficiencies identified in the Motion to Dismiss, the Opposition merely restates the same conclusory allegations set forth in the Trustee's 2021 Complaint. Because such conclusory allegations fail to state a claim upon which relief may be granted and fail to meet federal pleading standards, the Court should dismiss the Trustee's 2021 Complaint under Federal Rules 12(b)(6) and 9(b).

3.     The Court should also dismiss the Trustee's breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims pursuant to Federal Rules 12(b)(1) because, in accordance with Texas LLC law, the Trustee (as a creditor) lacks standing to bring these claims.

4.     Finally, the Court should deny the Trustee's request for leave to amend, raised in a footnote, because a footnote is (i) procedurally deficient and (ii) the Trustee has identified no new factual allegations that, even if taken as true, would yield legally cognizable claims.

1

II.    **ARGUMENT AND CITATION OF AUTHORITY**

A.    <u>**The Limitations Period Has Run on All of the Trustee's Claims.**</u>

5.    There is clear legal precedent for granting a motion to dismiss when a plaintiff's claims are barred by operation of a statute of limitations. *See, e.g.*, *In re Dean Witter P'ship Litig.*, Consolidated Civil Action No. 14816, 1998 Del. CH. LEXIS 133, at *11 (Del. Ch. July 17, 1998). The Third Circuit also permits defendants to raise limitations defenses in a Rule 12(b)(6) motion to dismiss where the plaintiff's untimeliness is "apparent on the face of the complaint." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

6.    Though the Trustee contends, on page 21 of his Opposition, that application of UFTA's one-year discovery rule is "generally inappropriate" at the motion to dismiss stage, the Opposition ignores that a motion to dismiss is appropriate where the facts that give rise to the running of the applicable statute of limitations are clear on the face of the complaint. *See, e.g., Dean Witter* 1998 Del. CH. LEXIS 133, at *11; *Robinson*, 313 F.3d at 135. The Trustee similarly fails to acknowledge that, in Texas, the start of the limitations period may be determined as a matter of law where "reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Cadle Co. v. Wilson*, 136 S.W.3d 345, 352 (Tex. App.—Austin 2004).

7.    Here, because the face of the Trustee's 2021 Complaint confirms that each of the Alleged 2016 Sales Proceeds Transfers occurred more than five (5) years before the Trustee filed the Trustee's 2021 Complaint, the Trustee "bear[s] the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled." *Dean Witter*, 1998 Del. Ch. LEXIS 133, at *23. The Trustee also does not receive the benefit of the "plaintiff-friendly inferences required in a 12(b)(6) analysis." *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 524-25 (Del. Ch. 2005)( "[t]his plaintiff-friendly stance does not govern assertion of tolling exceptions to

the operation of a statute of limitations."). Instead, to survive a motion to dismiss on the basis of a tolling exception, the plaintiff must have pleaded *specific* facts to demonstrate the applicability of that exception. *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 562 (Bankr. D. Del. 2008).

8.      Yet, neither the Trustee's 2021 Complaint nor the Opposition cite to anything more than the Trustee's conclusory statements—without factual support—that the Alleged 2016 Sales Proceeds Transfers were "concealed." Trustee's 2021 Complaint ¶¶ 63-65; Opposition at pp. 11, 22, 23, 26.

9.      Further, though the Trustee contends that he had no obligation to look into the facts concerning ANConnect's sales and related winddown, this ignores applicable law. The discovery rule applies until the "claimant knows, ***or through the exercise of reasonable diligence***, should know of the facts giving rise to the cause of action." *Zenner v. Lone Star Striping Paving, L.L.C.*, 371 S.W.3d 311, 315 (Tex. App.—Houston 2012) (emphasis added).[2] As the Trustee's 2021 Complaint admits that ANConnect's asset sales and winddown were publicly disclosed when the Debtor was pursuing claims against ANConnect—the Trustee's ostrich-like approach to this case cannot survive judicial scrutiny. *Id.* Of note, the Trustee's reliance on *Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 589-591 (5th Cir. 2020), is misguided. Contrary to the Opposition's contention to the contrary, in *Basic Capital*, the Fifth Circuit **affirmed** the District Court's dismissal, under Rule 12(b)(6), of a time-barred claim under Texas' UFTA under facts directly analogous to the facts in this case. The Fifth Circuit reasoned and held decisively that:

> Upon hearing that a defendant no longer has any assets, especially one being sued for millions of dollars, a reasonable plaintiff would make some sort of inquiry into

---

[2]      Though the Trustee seeks to distinguish *Zenner* from the present case on the basis that the creditor there already obtained a judgment against the debtor, Opposition at p. 23 n.8, this is a distinction without a difference. The question is whether the complaining party knew of the disposition of the asset whose proceeds were then transferred to insiders. Because the answers in both this case and *Zenner* are yes, the same legal analysis applies.

the situation. And since discovery in the state-court litigation was ongoing when
the deposition occurred, asking a few follow-up questions at the deposition, for
example, would likely have borne fruit.

. . .

Plaintiffs could have taken discovery about where [the debtor's] assets went. In any
event, Plaintiffs could have reasonably discovered the allegedly fraudulent nature
long before [filing their complaint].

*Id.* at 591. Though the Trustee did not pursue a deposition or Bankruptcy Rule 2004 discovery

before commencing this Adversary Proceeding, the allegations in the Trustee's 2021 Complaint

cites to facts establishing that these alleged claims were known or reasonably knowable more than

one year before the Trustee commenced this Adversary Proceeding.

10.    The Trustee's heavy reliance on *In re National Services Industries, Inc.*, 2015

Bankr. LEXIS 2029, at *22 (Bankr. Del. June 18, 2015) is similarly misplaced. In *National*

*Services Industries*, a privately held debtor corporation's shareholders "secretly looted" the debtor

by transferring millions of dollars. *Id.* at *22. Here, the Trustee's 2021 Complaint confirms that

nothing was clandestine about ANConnect's sale of substantially all of its assets and winddown.

Through these allegations, the Trustee readily concedes that both the Debtor and he had actual

knowledge of ANConnect's winddown and sale of its business divisions more than a year before

filing the Trustee's 2021 Complaint. Trustee's 2021 Complaint at ¶¶ 21-23, 32, 34, 37-38.[3]

---

[3]    The Trustee's own filings in the June 2018 Avoidance Action further demonstrate that the
Trustee was on notice of and familiar with ANConnect's business transactions and risks taken by
the Debtors dating back to May 2015, including insolvency concerns, such that any fraudulent
transfer claims were reasonably knowable and could have been raised timely.

In a May 7, 2015 email, Akin Gump (counsel to SunTrust, Alchemy's lender) raised
concerns that 'there are no provisions addressing ANConnect's solvency following the
closing. . . To add extra protection, we could take this one step further and request a
solvency opinion at closing.' . . . ***Despite Akin Gump's recommendation, the Debtors did***
***not obtain a solvency or fairness opinion in connection with the acquisition***.

June 2018 Avoidance Action at ¶¶ 70-71 (emphasis added).

11.     Like the plaintiff in *Basic Capital*, the Trustee's 2021 Complaint makes clear that he knew well before filing this suit that ANConnect was "offload[ing]" its assets. Trustee's 2021 Complaint at pp. 7, 9. Moreover, as explained above, the Trustee had access to information through which he could have, and a reasonable creditor would have, inquired about any transactions that might have affected his right to payment. Despite his conclusory assertions to the contrary, the Trustee's own pleadings establishes that he was on inquiry notice of the Alleged 2016 Sales Proceeds Transfers.

12.     The Trustee's attempt to apply the discovery rule to save his breach of fiduciary duty claim also fails for the same reasons. In fact, in *Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Inv'rs, LLC)*, 2022 Bankr. LEXIS 203, at *27 (Bankr. D. Del. Jan. 27, 2022), a Bankruptcy Judge in this District recently rejected a plaintiff's attempt to similarly toll the statute of limitations on a breach of fiduciary duty claim. Specifically, in *Eugenia*, the Court made clear that the statute of limitations period is tolled only until "plaintiffs [are] objectively aware of the facts giving rise to the wrong, i.e., on inquiry notice." *Id.* at *27. The Court found the plaintiffs to be on inquiry notice where they were previously involved in litigation that should have alerted them to the facts encompassing their lawsuit long before they filed suit. *Id.* at *29-30. The same can be said of the Trustee's claims here. As a result, this Court should dismiss the Trustee's 2021 Complaint with prejudice because it was filed beyond the applicable limitations period.

## B.     The Trustee's Constructive Fraudulent Transfer Claim and His § 544 Avoidance Claim Have Been Abandoned and Should be Dismissed.

13.     In the Opposition, the Trustee concedes that his constructive fraudulent transfer claim is untimely and cannot be tolled. *See* Opposition at p. 10 (acknowledging that the alleged transfers occurred in 2016, more than four years before the filing of this action); p. 21, n.7 (noting

5

that constructive fraudulent transfer claims are "not subject to such tolling" under the Uniform Fraudulent Transfer Act's discovery rule). Additionally, the Trustee further concedes that his claim under § 544 of the bankruptcy code was "mistaken," and he does not refute the Defendants' argument that his claims under the bankruptcy code are inapplicable to the action at hand. *See* Opposition at p. 15, n.4.

14.     It is well-settled that a party who fails to respond to arguments in a responsive brief has "abandoned [the] claim." *See United States ex rel. Kelly v. Select Specialty Hosp.-Wilmington, Inc.*, No. 16-CV-347, 2018 U.S. Dist. LEXIS 53815, at *18 (D. Del. Mar. 30, 2018); *see also Juju, Inc. v. Native Media, LLC*, No. 19-402-CFC, 2020 U.S. Dist. 104387, at *27-28 (D. Del. June 15, 2020). Accordingly, the Court should dismiss the Trustee's state law constructive fraudulent transfer claim and § 544 avoidance claim with prejudice.

**C.     Plaintiff Fails to State A Claim for Actual Fraudulent Transfer.**

15.     The Trustee admits that, to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim. Opposition at p. 17. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007)). The Trustee also concedes that his actual fraudulent transfer claim must satisfy the heightened pleading standard of Rule 9(b). Opposition at pp. 12-13. Nevertheless, the Trustee attempts to relax his pleading burden by asserting his status as a bankruptcy trustee. *Id.* Again, the Trustee understates his burden. The rigor of Rule 9(b)'s application may only be relaxed "where the factual information is peculiarly within the defendant's knowledge or control" *and* where a complaint "delineate[s] at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity." *Friedberg v. Barefoot Architect, Inc.*, 723 Fed. App'x 100,

6

103 (3d Cir. 2018). Even where the Court determines that Rule 9(b) standards may be relaxed, "a measure of particularity" is still required. *Bond v. Rosen (In re Wholesale Holdings LLC)*, 2022 Bankr. LEXIS 346, at *11 (Bankr. D. Del. Feb. 9, 2022). The Trustee cannot move the goalposts on his claim for actual fraud simply because he is a trustee in a bankruptcy case.

16.     These standards require the dismissal of the Complaint with prejudice. Even if the Court tolls the limitations period for Trustee's actual fraudulent transfer action, the claim falls well short of Rule 9(b)'s heightened pleading requirement. The Trustee alleges to have pleaded a "confluence of at least eight badges of fraud" to state a claim of actual fraud. Opposition at p. 19. A review of the Opposition shows, however, that the Trustee's 2021 Complaint is replete with cursory allegations that do no more than parrot the statutory badges of fraud. For example, the Trustee's Opposition Brief states that his 2021 complaint pleads TUFTA's third badge of fraud, which is, "the transfer or obligation was concealed." TEX. BUS. & COM. CODE § 24.005(b)(3). To prove this, the Trustee's Opposition cites paragraph 63 of his 2021 complaint, which reads, familiarly, "ANConnect concealed the Fraudulent Transfers from its creditors," and paragraph 65, stating, "The Fraudulent Transfers were not disclosed to and were concealed from ANConnect's creditors . . . ." Trustee's 2021 Complaint at ¶¶ 63, 65; Opposition at p. 19. Simply regurgitating this badge of fraud, without setting forth facts concerning "who, what, when, where and why" does not pass muster under federal pleading standards.

17.     In a similarly conclusory fashion, the Trustee attempts to demonstrate the presence of TUFTA's eighth badge of fraud, i.e., that the debtor did not receive reasonably equivalent value for the transfer, by citing to paragraph 57 of the 2021 Complaint, which echoes, "ANConnect received no value for the Fraudulent Transfers because they represent payments made on account of equity interests." Trustee's 2021 Complaint at ¶ 57; Opposition at p. 19. Such general

#124098687 v1

allegations of concealment, inadequate consideration, and each of the other badges of fraud cannot state a claim under the heightened pleading requirements of Rule 9(b), or even the plausibility standard of Rule 8(a). The Trustee cannot evade his burden of stating his claim of actual fraud with particularity by restating the statutory badges of fraud and leaving the Court to fill in the gaps. As a result, the Trustee's claim for actual fraudulent transfer should be dismissed.

D.    **The Trustee's Claim for Breach of Fiduciary Duty Should be Dismissed.**

18.    Even if the Trustee's breach of fiduciary duty claim is not time-barred, the Trustee lacks standing to bring this claim because the Trustee is not currently a member of ANConnect, a Texas LLC, and does not allege to have ever been a member. Due to its jurisdictional nature, a motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1). *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Such a motion may present either a facial or factual challenge to the Court's standing and/or subject matter jurisdiction to hear a case. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

19.    In its recitation of the alleged general rule regarding creditor standing in Texas, the Trustee has, unfortunately and not surprisingly, failed to distinguish between the laws governing corporations and the precedent governing limited liability corporations.

20.    In fact, the vast majority of cases cited by the Trustee are inapposite, as they involve standing on behalf of corporations, *not limited liability corporations*. For example, the Trustee cites a Delaware bankruptcy case interpreting Texas law, for the proposition that "breach of fiduciary duty claims become actionable by a creditor only when the *corporation* is insolvent." *See* Opposition at *27 citing *Smith v. Weinshanker (In re Draw Another Circle)*, 602 B.R. 878, 901 (Bankr. D. Del. 2019) (emphasis added). Notably, however, the bankruptcy court in *Smith v. Weinshanker* expressly declined to grant derivative standing to the Liquidating Trustee on behalf

8

of *the only* Limited Liability Company plaintiff while emphasizing: "the Trustee does not have derivative standing to assert breach of fiduciary duty claims against [members of Draw Another Circle, LLC]." *Id*. at 895 (Dismissing breach of fiduciary duty claims for lack of standing because the Liquidating Trustee was "not a member or an assignee" of the LLC).

21.     Tellingly, the ***only*** case cited to by the Trustee remotely addressing creditor standing to bring breach of fiduciary claims in the context of a *limited liability company* relies on the defunct "trust fund" theory that has since been superseded by statute in Texas. *See Floyd v. Option Mortg. Corp. (In re Supplement Spot, LLC),* 409 B.R. 187, 203 (Bankr. S.D. Tex. 2009) citing *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1269 (5th Cir. 1983) (superseded by statute). Indeed, despite the Trustee's insistence otherwise, the Texas Supreme Court as well as the Texas legislature have repeatedly precluded any further application of the trust fund doctrine:

> The corporate trust fund doctrine was an equitable doctrine which provided that when the assets of a dissolved corporation were distributed among its shareholders, a creditor of the dissolved corporation could pursue the assets on the theory that in equity they were burdened in his favor. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 550 (Tex. 1981). ***However, the equitable doctrine was later supplanted by legislative enactments. The Supreme Court of Texas held that Tex. Bus. Corp. Act art. 7.12 bars resort to the trust fund theory as it exists apart from the statute. Id. at 551.***

*Lowe v. L. & Lending, LLC*, No. SA-09-CA-1034-H, 2010 U.S. Dist. LEXIS 154555, *7-8 (W.D. Tex. Sept. 22, 2010) (emphasis added) citing and overruling *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1269-1275 (5th Cir. 1983).

22.     Indeed, as the Trust Fund doctrine has been superseded by statute, precedent does not bear out that creditors can sue derivatively. *See* Defendants' Supporting Memorandum (¶¶ 61-62). Importantly, Texas Business Corporation Act Article 7.12 and its successor statute, Texas Business Organizations Code section 101.452 do ***not*** allow creditors derivative standing to pursue

9

claims on behalf of limited liability companies. Other jurisdictions, including Delaware, have similarly held that standing of creditors to bring claims against limited liability companies is expressly limited to members based on applicable statutes. *See, e.g., CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011) (citing DEL. CODE ANN. tit. 6, § 18-1002 ("[a] plaintiff must be a member or an assignee"); *Head v. Ascendant Petroleum Holding, LLC*, No. 11-18-00151-CV, 2020 Tex. App. LEXIS 6031, at *14 (Tex. App.—Eastland July 31, 2020) (applying Delaware law).

23.     The Trustee's interpretation of the plain language of section 101.452 demonstrates a fundamental misunderstanding of the laws governing derivative claims. *See* Opposition at *29, n. 11. In particular, the Trustee cites *Elgohary v. Steakley*, which merely reinforces the Defendants' conclusion that a creditor lacks standing to bring a derivative claim against a limited liability company pursuant to section 101.452. *Id*. In *Elgohary*, a former manager (and contingent unliquidated creditor) of an LLC attempted to bring a derivative action against an LLC asserting claims, *inter alia*, of breach of fiduciary duty against the managers of the LLC. The court held that plaintiff lacked standing to sue on behalf of the LLC because Texas law requires that a derivative action plaintiff be a member of the entity that he intends to represent. Tex. Bus. Org. Code §101.452; *see Elgohary v. Steakley*, Civil Action No. 4:17-cv-01534, 2017 U.S. Dist. LEXIS 190621, *26 (S.D. Tex. Oct. 10, 2017) (dismissing breach of fiduciary duty claims against LLC and requiring derivative plaintiff to pay attorney fees to defendants for bringing "this suit 'without reasonable cause.'") *citing* Tex. Bus. Org. Code §101.461(b)(2). Here, the Trustee is not currently a member and does not allege to have ever been a member of ANConnect. As a result, the Trustee lacks derivative standing and the Second Claim should be dismissed.

24.     To the extent that the Trustee purports to have asserted a direct claim for breach of fiduciary duty as opposed to a derivative claim, courts in Texas and other jurisdictions have held

10

that individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate directors. *See Medlin v. Wells Fargo Bank, N.A. (In re I.G. Servs., Ltd.)*, No. 99-53170-C, 2007 Bankr. LEXIS 3329, at *10 (Bankr. W.D. Tex. July 31, 2007) (citing *N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007)) ("[t]o recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the [insolvent] corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors . . . ."); *see* TEX. BUS. ORGS. CODE § 21.551(1); TEX. BUS. CORP. ACT art. 5.14(A)(1) (expired Jan. 1, 2010).

25.     As the Trustee lacks standing to pursue derivative and direct claims for breach of fiduciary duty and has failed to plead that he is a member of ANConnect, as required by Texas and Delaware statute, the Trustee's Second Claim should be dismissed.

**E.    The Trustee's Aiding and Abetting Breach of Fiduciary Duty Should be Dismissed.**

26.     Aiding and abetting has been recognized as a "dependent" claim. *See, e.g., West Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014, pet. denied). Therefore, the derivative nature of an aiding and abetting claim will exist only with the success of the breach of fiduciary duty claim.

27.     The Trustee's Aiding and Abetting Claim is brought as a catch-all as the Trustee recognizes that he lacks standing to bring the breach of fiduciary duty with respect to the Alleged 2016 Sale Proceeds Transfers. The Trustee takes issue with the Defendants' reference to the unavailability of aiding and abetting claims in Texas and other jurisdictions under UFTA (Opposition at *28, n. 10). However, the Trustee does not dispute that the Trustee's 2021 Complaint is (i) devoid of allegations that the Management Defendants were recipients or

11

beneficiaries of the Alleged 2016 Sale Proceeds Transfers and (ii) asserts no factual basis beyond the simple existence of the Alleged 2016 Sale Proceeds Transfers to establish a claim for aiding and abetting breach of fiduciary duty. Indeed, the Trustee's **sole** basis comes down to: "effectuating the Fraudulent Transfers for the benefit of the parents of ANConnect and the shareholders thereof without regard to the interests of ANConnect's creditors, and by failing to prevent the Fraudulent Transfers." Trustee's 2021 Complaint at ¶ 83. Courts have rejected similar attempts by plaintiffs to bring claims of aiding and abetting fraudulent transfer in the form of aiding and abetting breach of fiduciary duty claims. *See, e.g., Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 203 (Del. 2006) (dismissing claims of breach of fiduciary duty against directors reasoning: "Despite the breadth of remedies available under state and federal fraudulent conveyance statutes, those laws have not been interpreted as creating a cause of action for 'aiding and abetting.'").

28.     Even assuming, *arguendo*, this Court were to find that the Trustee has standing to assert aiding and abetting breach of fiduciary duty claims, courts have held that a party with a direct fiduciary relationship cannot aid and abet a breach of fiduciary duty. *See Weinshanker*, 602 B.R. at 903. Texas does not currently recognize a claim for aiding and abetting breach of fiduciary duty. *See Official Comm. of Unsecured Creditors of Schlotzsky's, Inc. v. Grant Thornton, L.L.P. (In re Schlotzsky's, Inc.)*, 351 B.R. 430, 439 (Bankr. W.D. Texas 2006).

29.     Delaware's aiding and abetting standard is the same as Texas' standard for knowing participation in breach of fiduciary duty. *See Weinshanker*, 602 B.R. at 903. To establish a valid claim for aiding and abetting a breach of fiduciary duty in Delaware, a plaintiff must prove "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, ... (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *In re Syntax-Brillian Corp.*, 573 F. App'x. 154, 162 (3d Cir. 2014) (citing *Malpiede v. Townson*,

780 A.2d 1075, 1096 (Del. 2001)). "A defendant knowingly participates in a breach of fiduciary duty if it 'acts with the knowledge that the conduct advocated or asserted constituted such a breach.'" *Id*; *But see Trenwick*, 906 A.2d at 205 (dismissing claims for breach of fiduciary duty and aiding and abetting noting: "If a plaintiff cannot state a claim that the directors of an insolvent corporation acted disloyally or without due care in implementing a business strategy, it may not cure that deficiency simply by alleging that the corporation became more insolvent as a result of the failed strategy.").

30.     Here, aside from a cursory recitation of the elements, the Trustee has not pled that the Management Defendants (i) knew that OurAlchemy was a creditor of ANConnect or of its contingent unliquidated claims in the Delaware State Court Action;[4] (ii) knew that the Alleged 2016 Sale Proceeds Transfers would render ANConnect insolvent or place ANConnect in the zone of insolvency; or (iii) knew that a fiduciary relationship existed between OurAlchemy and ANConnect. As a result, the Trustee's Aiding and Abetting Claim should be dismissed for failure to state a claim.

III.    **THE TRUSTEE'S FOOTNOTE REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED**

31.     Embedded in footnote 12 of the Opposition, the Trustee requests leave to amend the Trustee's 2021 Complaint. *See* Opposition at p. 30, n. 12. A decision by this Court in the June 2018 Avoidance Action (to which the Trustee was a party) is instructive on why this most recent request for leave to amend the Complaint should be denied. *See Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*, 2019 Bankr. LEXIS 2905, *50-51 (Bankr. D. Del. Sept. 16, 2019) ("The Court will deny the Trustee's request for leave to amend based on procedural infirmities. . . [A]

---

[4]     In fact, the Delaware State Court Complaint evidences ANConnect's belief that the Debtor owed it millions of dollars.

request for leave to amend a complaint that is embedded in a footnote of an opposition to a motion to dismiss is improper."). "Denial of leave to amend is justified as 'courts have observed that where a plaintiff only requested leave to amend in a footnote in a response in opposing a motion to dismiss, doing so was not the proper method to seek leave to amend.'" *Id.* citing *Malivuk v. Ameripark*, LLC, 694 Fed. Appx 705, 710-11 (11th Cir. 2017) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.")); *see also Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)* No. 12-cv-2652 (RJS), 2017 WL 82391, at *60-*61 (S.D.N.Y. Jan. 6, 2017).

32.    What's more, this Court should deny leave to amend as there are no factual allegations present or proffered, even taken as true, that would yield legally cognizable claims. Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend. Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co. Sec., Derivative, & ERISA Litig.,* 493 F.3d 393, 400 (3d Cir. 2007) (internal quotation marks & citation omitted); *see also Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174-175 (3d Cir. 2010) (holding that it is futile to allow a complaint to be amended if the amended complaint as proposed would not survive a motion to dismiss under Rule 12(b)(6); *Miller v. Marcel Dutil the Canam Manac Grp., Inc. (In re Total Containment, Inc.)*, 335 B.R. 589, 601 (Bankr. E.D. Pa. 2005) ("However, where repleading could not correct the defects in a party's claim, a court should not grant leave to replead.") (citations omitted). As the Trustee's claims are (i) barred by the statute of limitations/repose, (ii) the Trustee lacks standing to bring its breach of fiduciary duty and aiding and abetting claims, and (iii) the factual allegations,

even taken as true, fail to state a claim for relief, further amendments would be futile and the request should be denied.

IV.    **CONCLUSION**

WHEREFORE, Defendants respectfully submit that the Court should (i) grant this Motion to Dismiss; (ii) dismiss the Trustee's 2021 Complaint in its entirety with prejudice; (iii) deny the request for leave to amend; and (iv) grant such further relief as may be just and appropriate.

Dated: February 18, 2022                     Respectfully Submitted,
Wilmington, DE

**TROUTMAN PEPPER HAMILTON**              **ALSTON & BIRD LLP**
**SANDERS LLP**                           David A. Wender
                                          Grant T. Stein
/s/ Evelyn J. Meltzer                     1201 West Peachtree Street
David B. Stratton (DE No. 960)            Atlanta, Georgia, 30309
Evelyn J. Meltzer (DE No. 4581)           Telephone: (404) 881-7000
Hercules Plaza, Suite 5100                Facsimile: (404) 881-7777
1313 N. Market Street                     david.wender@alston.com
P.O. Box 1709                             grant.stein@alston.com
Wilmington, Delaware 19899-1709
Telephone: (302)-777-6532                 *Counsel for Defendants* Anderson Media
Facsimile: (302)-421-8390                 Corporation, ANConnect, LLC, Anderson
david.stratton@troutman.com               Management Services, Inc., Charles C. Anderson,
evelyn.meltzer@troutman.com               Jr., Jay R. Maier, Bill Lardie, and Chuck Taylor

15