## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| OUR ALCHEMY, LLC, *et al*., | ) | Case No. 16-11596 (JTD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| GEORGE L. MILLER in his capacity as | ) | |
| Chapter 7 Trustee for the jointly administered | ) | |
| bankruptcy estates of Alchemy, LLC and | ) | |
| Anderson Digital, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 21-51420 (JTD) |
| | ) | |
| ANDERSON MEDIA CORPORATION; | ) | |
| ANCONNECT, LLC; ANDERSON | ) | |
| MANAGEMENT SERVICES, INC.; CHARLES | ) | |
| C. ANDERSON, JR.; JAY R. MAIER; BILL | ) | |
| LARDIE; AND CHUCK TAYLOR | ) | |
| | ) | |
| Defendants. | ) | **Re:  D.I. 9** |

## MEMORANDUM OPINION AND ORDER

Plaintiff George L. Miller, the Chapter 7 Trustee for the jointly administered bankruptcy estates of the Debtors (the "**Trustee**"), commenced this adversary proceeding against Defendants[1] seeking to avoid and recover certain alleged fraudulent transfers made by ANConnect (the "**2021 Action**").[2]  Defendants move to dismiss arguing that: (i) the 2021 Action is barred by the applicable limitations period; (ii) the Trustee lacks standing to bring the claims;

---

[1] Defendants in the present action are Anderson Media Corporation ("**Anderson Media**"), ANConnect, LLC ("**ANConnect**"), Anderson Management Services, Inc. ("**AMS**") (Anderson Media, ANConnect, AMS, together the "**Business Defendants**"), Charles C. Anderson, Jr., Jay R. Maier, Bill Lardie, and Chuck Taylor (Charles C. Anderson, Jr., Jay R. Maier, Bill Lardie, and Chuck Taylor, together the "**Management Defendants**").

[2] Complaint, Adv. D.I. 1. A previous action was initiated by the Trustee against the same Defendants in 2018. Adv. Proc. No. 18-50633.

and (iii) the Complaint fails to state a claim upon which relief may be granted.[3]  Having

considered the parties' arguments and submissions the Motion is granted in part and denied in

part as set forth below.

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28

U.S.C. § 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

In July of 2015, Our Alchemy purchased certain assets from ANConnect (the

"**ANConnect Transaction**").[4]  On February 17, 2016, ANConnect and Anderson Merchandisers

filed a complaint against Our Alchemy in Delaware state court (the "**Delaware Action**"),

alleging that Our Alchemy owed ANConnect post-closing adjustments and certain other

payments and compensation in connection with the ANConnect Transaction.  In response,

Debtors alleged that Our Alchemy is a creditor of ANConnect for purposes of the Delaware

Uniform Fraudulent Transfer Act ("**DUFTA**") and asserted counterclaims against ANConnect

for breach of the ANConnect Transaction's asset purchase agreement and for wrongful

withholding of receivables owed to Debtors.[5]

Debtors filed their respective petitions under Chapter 7 of the Code on July 1, 2016.  On

June 29, 2018, the Trustee commenced an adversary proceeding against the Defendants and

---

[3] Defendants' Motion to Dismiss the Trustee's Complaint, Adv. D.I. 9 (the "**Motion**"); Memorandum of
Law in Support of the Defendants' Motion to Dismiss the Trustee's Complaint ("**Defendants'
Memorandum in Support**"), Adv. D.I. 10
[4] At the time of the transaction, Our Alchemy was known as Millennium Entertainment, LLC. Complaint,
Adv. D.I. 1 at 7-9.
[5] *Id*. at 8. Because of Our Alchemy's bankruptcy filing, the Delaware Action has been stayed pursuant to
11 U.S.C. § 362.

several others, seeking to avoid the ANConnect Transaction as fraudulent (the "**2018 Action**"). The 2018 Action remains pending following denial of a motion for partial summary judgment. [6]

On December 29, 2021, the Trustee commenced the 2021 Action alleging that in June of 2016, while the Delaware Action was pending and while ANConnect was winding down operations, ANConnect intentionally made several transfers to insiders in order to defraud known creditors while it was insolvent or in the zone of insolvency.  Specifically, the Complaint alleges that ANConnect fraudulently transferred approximately $23.8 million to affiliated entities in June and August of 2016 "with the actual intent to hinder, delay, and/or defraud its then-current and future creditors, including Our Alchemy  (the "**Transfers**"). [7]  The 2021 Action asserts claims for: (i) fraudulent transfers pursuant to Section 1304(a) of DUFTA and Sections 544 and 550 of the Code against the Business Defendants; (ii) breach of fiduciary duty against the Management Defendants who authorized the Transfers; and (iii) aiding and abetting breach of fiduciary duty against those same Management Defendants.

## ANALYSIS

### I.    LEGAL STANDARD

Defendants move to dismiss all three Counts of the 2021 Action on several grounds. First, Defendants move to dismiss Count I as barred by the applicable limitations period. Further, they seek dismissal of Count I for failing to state a claim upon which relief may be granted and failing to meet the applicable pleading standards for bringing fraud claims.

---

[6] The 2018 Action was filed against several subsidiaries of Anderson Media. In connection with the 2018 Action, the Trustee argues that the ANConnect Transaction is avoidable as a constructive and actual fraudulent transfer under DUFTA Sections 1304(a) and Section 1305(a) as well as under Sections 544, 548, and 550 of the Bankruptcy Code. Prior to the motion for partial summary judgment, a motion to dismiss the 2018 Action was denied in part and granted in part in *Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*, Ch. 11 Case No. 16-11596 (KG), Adv. No. 18-50633 (KG), 2019 Bankr. LEXIS 2905 (Bankr. D. Del. Sep. 16, 2019).
[7] Complaint, Adv. D.I. at 11-14.

Defendants also seek dismissal of Counts II and III on statute of limitations grounds, and because the Trustee lacks standing to bring breach of fiduciary duty claims.

Defenses based on limitation periods are generally fact specific and are raised as affirmative defenses when answering a complaint.  The Third Circuit, however, recognizes that a limitations defense may be raised by a motion under Rule 12(b)(6)[8] if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. United States Veterans' Administration Hospital*, 514 F.2d 1092, 1094 (3d Cir. 1975)). If the validity of the "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6). *Id*.

In addition, a Rule 12(b)(6) motion can challenge the sufficiency of the factual allegations in the complaint. *Kost v. Kovacevic*, 1 F.3d 176, 183 (3d Cir. 1993).  To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The court must draw all reasonable inferences in favor of the plaintiff. *See, e.g., Alpizar-Fallas v. Favero,* 908 F.3d 910, 914 (3d Cir. 2018).  On a motion to dismiss, "[t]he defendant bears the burden to show that the plaintiff's claims are not plausible." *In re LSC Wind Down, LLC*, 610 B.R. 779, 783 (Bankr. D. Del. 2020).

---

[8] Fed. R. Civ. P. 12 is made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. R. 7012.

Weighing a motion to dismiss, requires a three-part analysis. "First, the court must take note of the elements needed for a plaintiff to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Iqbal*, 556 U.S. at 675). Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pled facts as true and disregarding any legal conclusions. *Id.*; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 679). Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Santiago*, 629 F.3d at 130.

Federal Rule of Civil Procedure 9 requires that when alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake"[9] *DiMartino v. BMW of N. Am., LLC*, No. 15-8447 (WJM), 2016 U.S. Dist. LEXIS 106138, at *20-23 (D.N.J. Aug. 11, 2016) (granting defendant's motion to dismiss where plaintiff failed to satisfy Rule 9(b)'s heightened pleading requirement).

Rule 12(b)(1) allows for dismissal of a complaint when the court lacks subject matter jurisdiction. Because standing is a jurisdictional matter, a motion to dismiss brought under Rule 12(b)(1) for lack of standing is proper. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Ballentine v. U.S.*, 486 F.3d 806, 810, 48 V.I. 1059 (3d Cir. 2007)). Generally, a decision on Rule 12(b)(1) grounds does not go to the merits. *In re Cubic Energy, Inc.*, 603 B.R. at 749. In deciding a Rule 12(b)(1) motion, courts "must first determine whether the motion is a facial or factual attack." *In re Schering-Plough Corp.*, 678 F.3d at 243 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d. Cir. 1977)). While a party raising a facial attack disputes the sufficiency of the pleadings, a party

---

[9] Fed. R. Civ. P. 9 is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7009.

raising a factual attack argues that "although the pleadings facially justify jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside the court's jurisdiction. *In re AE Liquidation, Inc.*, 435 B.R. 894, 900 (Bankr. D. Del. 2010).

When reviewing a factual attack, courts may consider evidence outside the pleadings to evaluate the merit of the disputed allegations. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *In re AE Liquidation, Inc.*, 435 B.R. at 900. However, when reviewing a facial attack, courts "must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the Plaintiff." *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Since the parties have not cited to any information outside of the Complaint, Defendants' motion is a facial attack. *See Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 440-41 (W.D. Pa. 2016) ("If the defendant challenges jurisdiction in its Rule 12(b)(1) motion before answering the complaint or otherwise presenting competing facts, the Rule 12(b)(1) motion is, by definition, a facial attack." (internal quotation marks and citation omitted)); *Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered [the complaint] and the parties had not engaged in discovery, the [Rule 12(b)(1)] motion to dismiss was facial.")); *Const. Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (determining that where the Commonwealth filed its motion before filing any answer to the complaint the attack was facial as a factual attack requires a factual dispute established by competing facts).

## II.    DISCUSSION

### A.    Count I: Avoidance and Recovery of Transfers

Defendants argue that because the Transfers occurred more than five years before the Trustee initiated this Action, the Trustee's fraudulent transfer claims are time-barred.

Defendants identify the Texas Uniform Fraudulent Transfer Act ("**TUFTA**") as the relevant governing statute arguing that this case has the most significant relationship with Texas.  The Trustee contends that DUFTA is the relevant statute but asserts that the same result would occur under either DUFTA or TUFTA as both Texas and Delaware adopted the Uniform Fraudulent Transfer Act.  At this stage of the proceeding, I do not need to decide which statute applies because the result under either is the same.  See, e.g., *In re Mervyn's Hldgs., LLC*, 426 B.R. 488, 496 n.6 (Bankr. D. Del. 2010) (declining to conduct a choice of law analysis and instead proceeding with an analysis under UFTA as each state similarly adopted the UFTA and the same result would occur).  *In re Physiotherapy Hldgs., Inc.*, Ch. 11 Case No. 13-12965, Adv. No. 15-51238, 2017 Bankr. LEXIS 3830, at *9 (Bankr. D. Del. Nov. 6, 2017) ("[m]any Courts have held that a motion to dismiss is not the appropriate time to raise the choice of law question because the decision may require a full factual record.").  Since the result under either law would be the same, I will proceed with the analysis limited to the four-year statute of repose and the one-year discovery rule contained in both DUFTA and TUFTA. [10]

Under both DUFTA and TUFTA there is a four-year statute of repose for fraudulent transfer claims based on either constructive or actual fraud. 6 Del. Code § 1309(1)-(2); *accord* Tex. Bus. & Com. Code § 24.010(a)(1)-(2).  The Trustee merely alleges the applicability of Section 1304(a) without distinguishing between Sections 1304(a)(1) and 1304(a)(2).  Section 1304(a)(1) applies to fraudulent transfer claims based on actual fraud while Section 1304(a)(2)

---

[10] The Trustee attempts to rely on Section 544 to pursue certain fraudulent transfer claims.  However, the Trustee did not address this argument in Plaintiff's Memorandum in Opposition. Instead, he calls his inclusion of Section 544 "mistaken" in a footnote without affirmatively addressing or withdrawing that claim. Plaintiff's Memorandum in Opposition, Adv. D.I. 13 at 15 n.4. Because the Trustee has abandoned that claim by failing to respond to Defendants' arguments and concedes that it is mistaken, the Trustee's Section 544 claim is dismissed with prejudice. *See United States ex rel. Kelly v. Select Specialty Hosp.-Wilmington, Inc.*, No. 1:16-CV-347, 2018 U.S. Dist. LEXIS 53815, at *18 (D. Del. Mar. 30, 2018).

applies to fraudulent transfer claims based on constructive fraud. [11]  Section 1309(2) governs

constructive fraudulent transfer claims and sets a strict four-year period for filing a cause of

action. 6 Del. Code § 1309(2).  Because Section 1309(2) does not provide for the use of the

discovery rule, any fraudulent transfer claims based on constructive fraud brought by the Trustee

under Section 1304(a)(2) are time-barred. [12]

Where a party's fraudulent transfer claim is based on actual fraud, both statutes provide

for a one-year discovery rule. 6 Del. Code § 1309(1); *accord* Tex. Bus. & Com. Code §

24.010(a)(1).  The discovery rule extends the time in which a claimant may file a claim by one

year after the plaintiff knew or could have reasonably discovered the transfer and its fraudulent

nature. *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 195 (5th Cir.

2013) ("we *Erie* guess that the Texas Supreme Court would conclude that section 24.010(a)(1) of

TUFTA requires that a fraudulent-transfer claim must be filed within one year after the

fraudulent nature of the transfer is discovered or reasonably could have been discovered.");

*Forman v. Kelly Capital, LLC (In re Nat'l Serv. Indus.)*, Ch. 7 Case No. 12-12057, Adv. No. 14-

50377, 2015 Bankr. LEXIS 2029, at *21 (Bankr. D. Del. June 18, 2015) ("If the fraud is hidden,

however, the statute of limitations is extended to one year after the fraud was or could reasonably

---

[11] Section 24.005(a)(1) of TUFTA applies to actual fraudulent transfer claims and Section 24.005(a)(2) applies to constructive fraudulent transfer claims. Like Section 1309(2) of DUFTA, TUFTA's Section 24.010(a)(2) sets a strict limitations period of four year for constructive fraudulent claims brought pursuant to Section 24.005(a)(2). Section 24.010(a)(1) makes the discovery rule available for actual fraudulent transfer claims brought under Section 24.005(a)(1).

[12] The alleged Transfers took place in 2016, well outside of the four-year window provided for in Section 1309(2). Complaint, Adv. D.I. 1 at 11-12. Even if this were not the case, the Trustee failed to address any exceptions for constructive fraud despite his blanket reliance on Section 1304 in the Complaint. By not addressing constructive fraudulent transfer claims in Plaintiff's Memorandum in Opposition, the Trustee abandoned any alleged constructive fraudulent transfer claims and concedes that they are time-barred. Therefore, any fraudulent transfer claims based on constructive fraud are dismissed with prejudice.

have been discovered by the creditor."). A successful fraudulent transfer claim based on actual fraud, however, must satisfy the requirements of Rule 9(b).

Rule 9(b) requires that a party pursuing a claim for actual fraudulent transfer plead fraud with particularity. Fed. R. Civ. Proc. 9(b). Defendants argue that the Trustee's complaint fails to meet that pleading requirement because the Complaint contains only conclusory statements without specific facts to support a claim for actual fraud. The Trustee disagrees, arguing that the Complaint alleges at least eight badges of fraud sufficient enough to establish an actual intent to defraud. I agree.

Determining whether a transfer was made with fraudulent intent is a fact intensive inquiry "rarely susceptible to resolution at the [pleading] stage." *In re Polichuk*, 506 B.R. 405, 418 (Bankr. E.D. Pa. 2014). Courts in both Texas and Delaware rely on badges of fraud as circumstantial proof of actual fraudulent intent. *Jones v. Dyna Drill Techs*., LLC, No. 01-16-01008-CV, 2018 Tex. App. LEXIS 6689, at *14 (Tex. App. Aug. 23, 2018) (quoting *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 370 (S.D. Tex. 2008)); *In re Fedders N. Am., Inc.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009). The badges of fraud include a consideration of whether:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code § 24.005(b)(1)-(11); *accord* 6 Del. Code § 1304(b)(1)-(11) ("(3) the transfer or obligation was disclosed or concealed").  "A court need not find that all—or even a majority—of the badges of fraud are present to find that a debtor acted with actual intent to hinder, delay, or defraud." *Osherow v. Charles (In re Wolf)*, Ch. 7 Case No. 15-31477-HCM, Adv. Nos. 16-03002-HCM, 16-03005-HCM, 2016 Bankr. LEXIS 3397, at \*74 (Bankr. W.D. Tex. Sep. 15, 2016) (citing *In re Think3, Inc.*, 529 B.R. 147, 198 (Bankr. W.D. Tex. 2015)).

The 2021 Action alleges facts indicative of certain badges of fraud including that the Transfers were concealed [13] and made to insiders of ANConnect for no consideration; [14] were made after Our Alchemy filed substantial counterclaims against ANConnect; [15] consisted of substantially all of ANConnect's assets, rendering ANConnect insolvent; [16] and constituted the removal of ANConnect's assets to avoid the claims of creditors. [17]  Thus, the 2021 Action pleads with particularity enough facts to satisfy Rule 9(b)'s requirements.

Defendants contend that even if Count 1 meets the appropriate pleading standard, it is still time-barred because the facts giving rise to the claim were known or reasonably knowable more than a year before the 2021 Action was commenced.  Defendants specifically argue that the Trustee was aware that ANConnect began winding down its business in 2010, selling several material business lines. [18]  According to Defendants, these facts would have prompted a reasonably diligent creditor to investigate whether its right to payment was threatened. [19]  The Trustee counters this suggestion by arguing that due to the privately held nature of the Defendants the Transfers were

---

[13] *Id*. at 13.
[14] Complaint, Adv. D.I. 1, at 3, 5, 12.
[15] *Id*. at 10-11.
[16] *Id*. at 12-13.
[17] *Id*.
[18] Complaint, Adv. D.I. at 5-7, 9.
[19] Defendants' Memorandum in Support, Adv. D.I. 10 at 14-15 (quoting facts within the Complaint for support).

concealed and only discoverable by him in March of 2021 when he received discovery in the 2018 Action.[20]

Whether facts giving rise to the Trustee's claims were known or reasonably knowable more than a year before the 2021 Action was commenced is a question of fact not appropriate for determination at this stage. *Janvey v. Willis of Colo., Inc.*, Civil Action No. 3:13-CV-3980-N, 2014 U.S. Dist. LEXIS 183344, at *20 (N.D. Tex. Dec. 5, 2014) ("[a]pplication of the TUFTA 'discovery rule' is a factual question generally inappropriate for resolution on a motion to dismiss"); *In re IT Grp. Inc.*, Adv. No. 04–1268, 2005 WL 3050611, at *16 (D. Del. Nov. 15, 2005) (declining to dismiss a fraudulent transfer claim on statute of limitations grounds because a factual issue regarding when the fraud was or could have reasonably been discovered existed). Therefore, the Defendants' motion to dismiss Count I, to the extent it alleges claims for actual fraudulent transfers, is denied.

### B.    Counts II and III: Breach of Fiduciary Duties and Aiding and Abetting Breach of Fiduciary Duties

The Trustee's second and third causes of action are against the Management Defendants for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.[21]  The Trustee alleges that the Management Defendants breached their fiduciary duty to creditors when they distributed the assets of ANConnect to its members leaving nothing for creditors.  The Trustee asserts that because ANConnect is insolvent and ceased business operations, under Texas law its assets became assets of a trust for the benefit of its creditors. Defendants move to dismiss on two grounds: 1) the claims are barred by the applicable statute of limitations; and 2) the Trustee lacks

---

[20] Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Failure to State a Claim, Adv. D.I. 13 ("**Plaintiff's Memorandum in Opposition**") at 24.
[21] If the Trustee's claims for breach of fiduciary duty against the Management Defendants fail, his claims for adding and abetting those breaches fail as well.

standing to bring claims for breach of fiduciary duty. Because I find that the Trustee lacks

standing, I do not need to address the statute of limitations argument in connection with Counts

II and III.

### i.        Standing

Defendants make two arguments why the Trustee lacks standing to bring claims for

breach of fiduciary duty.  First, they argue that the "trust fund" doctrine upon which the Trustee

relies is no longer applicable under Texas law because it has been abrogated by statute.  Second,

they assert that because ANConnect is a Texas limited liability company (LLC) the Trustee lacks

standing because he is not, and never was, a member of ANConnect which is a requirement for

standing to assert derivative claims on behalf of a Texas LLC.  For the reason discussed below,

Defendants are incorrect on both grounds.

### ii.        The Trust Fund Doctrine

The Trustee relies on the equitable corporate trust fund doctrine to argue that standing

exists for creditors of a Texas corporation (and by extension an LLC) to sue officers and

directors for breach of fiduciary duty when an entity is insolvent and ceases business

operations.[22]  To be sure, the status of the Texas corporate trust fund doctrine is a bit muddled.

As the Fifth Circuit recognized in *In re Mortgage America Corp.*, "the 'corporate trust fund

doctrine' is [a] theory that has been most thoroughly studied by courts and commentators, [but]

is nonetheless often poorly understood." 714 F.2d 1266, 1268-69 (5th Cir. 1983). The doctrine is

an equitable remedy that "was established principally to permit a court of equity to marshal and

distribute a corporation's assets upon its insolvency and dissolution in much the same way as

would a modern bankruptcy court." *Id*. at 1269.

---

[22] Plaintiff's Memorandum in Opposition, Adv. D.I. 13 at 27-29.

Relying upon the Texas Supreme Court's decision in *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547 (Tex. 1981), Defendants argue that the corporate trust fund doctrine has been supplanted by Texas statutory law and the Trustee is therefore barred from proceeding under the trust fund doctrine.  In *Hunter*, the court was faced with the question of whether a tort action that arose eleven years after the corporation's statutory dissolution could be brought under the trust fund doctrine despite the three-year statute of limitations in Article 7.12 of the Texas Business Corporation Act. Tex. Bus. Corp. Act. Art. 7.12 (expired Jan. 1, 2010). [23]  The *Hunter* court recognized that beginning in 1879, the Texas legislature began enacting remedial statutes that embodied the trust fund doctrine, including Article 7.12.  The court went on to explain that:

> Under these remedial statutes, the legislature had given creditors of a dissolved corporation 'the same broad measure of relief which equity would have afforded in the absence of legislation.' . . . The effect of these statutes was to supplant the equitable trust fund theory by declaring a statutory equivalent. In Texas, recognition of the trust fund theory, as applied to dissolved corporations, did not exist apart from these statutes.

*Hunter*, 620 S.W.2d at 550.

Despite this ruling by the Texas Supreme Court, numerous Texas state and federal courts continue to recognize the existence of the trust fund doctrine under Texas law without reference to the *Hunter* decision. *See, e.g.*, *White v. Zhou Pei*, 452 S.W.3d 527, 541 n.16 (Tex. App. 2014)

---

[23] In 2010, Article 7.12 was replaced by Tex. Bus. Orgs. Code § 21.552(a) which provides that:

> Subject to Subsection (b), a shareholder may not institute or maintain a derivative proceeding unless:
>     (1) the shareholder:
>         (A) was a shareholder of the corporation at the time of the act or omission complained of; or
>         (B) became a shareholder by operation of law originating from a person that was a shareholder at the time of the act or omission complained of; and
>     (2) the shareholder fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

Tex. Bus. Orgs. Code § 21.552(a)

("when a corporation becomes insolvent and ceases doing business, its assets become a trust fund for the benefit, primarily, of its creditors, and the officers and directors owe a fiduciary duty to the creditors, breach of which gives rise to a cause of action for the creditors against the officers and directors."); *Ramirez Cap. Servs., LLC v. McMahan*, No. 4:21-CV-00241-ALM, 2021 U.S. Dist. LEXIS 238776, at *14 (E.D. Tex. Dec. 14, 2021) (recognizing that the trust fund doctrine recognizes a creditor's right to sue derivatively and exists only in the context of an insolvent corporation that is no longer operating); *Floyd v. Hefner*, No. H-03-5693, 2006 U.S. Dist. LEXIS 70922, at *48-49 (S.D. Tex. Sep. 29, 2006) ("only the trust fund doctrine, as explained by Texas state courts, rather than some other 'insolvency exception,' provides a basis for creditors of a corporation to sue the directors of that corporation.").

Surprisingly, even one of the main cases cited by Defendants for the proposition that the trust fund doctrine is no longer relevant in Texas actually recognizes it applicability. In *Aurelius Capital Master, Ltd. v. Acosta*, No. 3:13-CV-1173-P, 2014 U.S. Dist. LEXIS 151201 (N.D. Tex. Jan. 28, 2014), the court was faced with the question of when creditors may derivatively sue a corporation's directors for breach of fiduciary duty. The court recognized that "Texas law indicates that creditors have never been given the right to sue for breach of fiduciary duty outside the limited exception of the trust fund doctrine." *Id*. at *8. The court went on to recognize that mere insolvency was not sufficient to invoke the doctrine. Instead, a creditor "can only bring such suits when the corporation is insolvent and no longer operating." *Id*. at *6. Since the corporation at issue in *Aurelius* was still operating, the court concluded, creditors did not have standing to bring a derivative suit for breach of fiduciary duty.

How then does one reconcile the Texas Supreme Court's decision in *Hunter*, with the numerous cases that still recognize the applicability of the trust fund doctrine? While none of the

cases cited by the parties address the dichotomy, the answer appears fairly straight forward. As the *Hunter* court stated, the statutory enactments supplanted the trust fund doctrine "as applied to <u>dissolved</u> corporations." The dissolution of a Texas corporation is governed by chapter 11 of the Business Organization Code (BOC). This chapter of the BOC provides certain benefits to a company seeking to dissolve, as well as certain obligations in order to receive those benefits. For example, a company is not terminated until it files a certificate of termination. Tex. Bus. Orgs. Code § 11.102. A Certificate of Termination must include, among other things, a certification that all taxes have been paid, provide the names and addresses of all governing persons, attest to compliance with all winding up requirements, and include a file number provided by the Texas Secretary of State. Tex. Bus. Orgs. Code § 11.101. Significantly, the company must also provide a deposit for all liabilities to both known and unknown creditors. Tex. Bus. Orgs. Code § 11.352.[24] In return, the dissolved entity receives, among other things, the benefit of a three-year statute of limitations for all claims that existed at the time of dissolution. Tex. Bus. Orgs. Code § 11.359.[25]

The logical conclusion, of course, is that the trust fund doctrine still exists in Texas unless a company has undertaken the process of dissolution under the BOC. To hold otherwise would be fundamentally unfair to the creditors of a company that ceases business operations, distributes its assets to its shareholders or members but never seeks the protection of dissolution. Outside of the receivership route, nothing in the BOC gives creditors the right to seek dissolution of a company and there do not appear to be any cases where a court allowed a creditor to do so.

---

[24] The BOC also provides that a court may revoke a dissolution for both actual and constructive fraud, and the applicable statute of limitations is tolled in accordance with the discovery rule. Tex. Bus. Orgs. Code § 11.153.

[25] Section 11.359 may actually be a statute of repose since the BOC refers to "extinguishment." *See Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 286-87, 287 n.15 (Tex. 2010).

Tex. Bus. Orgs. Code § 11.405. [26]  Creditors that are defrauded (whether actual or constructive)

by the officers and directors of an insolvent, non-operating company that did not seek dissolution

would be left with no recourse.

The Trustee's complaint does not allege that ANConnect filed for dissolution in

accordance with the BOC.  More significantly, Defendants do not claim in their motion to

dismiss that they undertook the process of seeking dissolution under the BOC. The Trustee does

allege that ANConnect is insolvent and that it ceased business operations.  Defendants do not

dispute this allegation in the Motion to Dismiss.

### iii.    Does the Trust Fund Doctrine Apply as Against a Texas Limited Liability Company?

Having determined that the trust fund doctrine still applies in Texas under certain

circumstances, the question remains whether it matters that ANConnect is a Texas LLC, rather

than a corporation.  Not surprisingly, the parties disagree.  Defendants contend that under Texas

law, only a member of an LLC has standing to pursue derivative claims citing to Section 101.452

the Texas BOC.  Section 101.452 provides in relevant part:

> (a) Subject to Subsection (b), a member may not institute or maintain a derivative
> proceeding unless:
>> (1) the member:
>>> (A) was a member of the limited liability company at the time of the
>>> act or omission complained of; or
>>> (B) became a member by operation of law originating from a person
>>> that was a member at the time of the act or omission complained of;
>>> and
>> (2) the member fairly and adequately represents the interests of the limited
>> liability company in enforcing the right of the limited liability company.

Tex. Bus. Orgs. Code § 101.452(a).

---

[26] Section 11.405(a)(4) of the BOC provides that a court may order the liquidation of the property and
business of a domestic entity and may appoint a receiver if a creditor establishes that irreparable damage
will ensue to the unsecured creditors of the domestic entity as a class unless there is an immediate
liquidation. Tex. Bus. Orgs. Code § 11.405(a)(4).

The Trustee argues that notwithstanding Section 101.452, Texas courts have recognized the ability of creditors to sue under the trust fund doctrine where an LLC is insolvent and is no longer operating. Defendants counter that the Trustee fails to distinguish between cases applying the doctrine to Texas corporations and those involving LLCs. None of the cases cited by either party directly address the applicability of the trust fund doctrine to cases involving a Texas LLC.

Defendants, for example, refer to the decision by Judge Gross in *Smith v. Weinshanker (In re Draw Another Circle)* 602 B.R. 878, 901 (Bankr. D. Del. 2019) for the proposition that while under Texas law, the court found that creditors did have fiduciary duty claims against certain Texas corporations, the only LLC defendant in the case was dismissed for lack of standing. Defendants failed to disclose in their papers, however, that the dismissed LLC was a Delaware LLC, not a Texas LLC. As discussed below, that is a distinction with a big difference.

Defendants also rely on *Elgohary v. Steakley*, No. 4:17-cv-01534, 2017 U.S. Dist. LEXIS 190621 (S.D. Tex. Oct. 10, 2017), a case the Trustee cited for the proposition that BOC Section 101.452 only applies when a <u>member</u> seeks to bring a derivative suit and does not preempt application of the trust fund doctrine to a Texas LLC. In a gross misrepresentation of the holding in that case, Defendants stated in their papers that: "The court held that a derivative action plaintiff lacked standing to sue on behalf of the LLC because Texas law requires that a derivative action plaintiff be a member of the entity he intends to represent."[27] That is decidedly <u>not</u> what the court held. Instead, the court found that while the plaintiff was still a member of the LLC (having been removed as a manager, not as a member), due to his personal litigation against the defendants, the limited size of his contribution to the LLC, his hostility toward the defendants and his inability to garner support among other members, he did not fairly represent the interests

---

[27] Defendants' Reply in Support, Adv. D.I. 14 at 10

of the LLC in order to maintain the litigation as required by Section 101.452. *Elgohary*, 2017 U.S. Dist. LEXIS 190621, at *23-24. The court further held that because he did not have standing to represent the parent LLC, he also did not have double derivative standing to bring an action on behalf of the LLC's wholly owned subsidiaries. *Id.* at *24-25.

The only case that arguably comes close to addressing the issue is *Floyd v. Option One Mortg. Corp. (In re Supplemental Spot, LLC)*, 409 B.R. 197 (Bankr. S.D. Tex. 2009). Defendants criticize the Trustee's reliance on *Floyd* because the court relies on trust fund doctrine. As I have already stated, the trust fund doctrine can apply in certain limited circumstances. *Floyd* is problematic in a number of other ways, however. First, the *Floyd* court was making findings of fact and conclusions of law following a trial in which a chapter 11 trustee was seeking to recover fraudulent transfers from a debtor— that happened to be a Texas LLC— to a third party. While the court recognized the applicability of the trust fund doctrine to insolvent corporations,[28] the court did not mention (let alone analyze) the fact that the debtor was a Texas LLC as opposed to a corporation. The case, therefore, has little precedential value to the question at hand, i.e., can a creditor sue derivatively on behalf of a Texas LLC under the trust fund doctrine?

The bottom line is that there is no relevant authority to indicate how Texas courts might decide the issue of creditor standing to sue on behalf of a Texas LLC. I must, therefore, try to determine how the Texas Supreme Court would address the question. *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996) ("[i]n adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply existing

---

[28] The *Floyd* court concluded that a fiduciary relationship existed with the debtor's creditors since the debtor was insolvent at the time of the transfers. 409 B.R. at 204. As I have noted above, the trust fund doctrine requires a showing of insolvency and that the company has ceased operations.

state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us.").  Defendants, under a public policy argument, would have me look to Delaware law on creditor standing in the context of a Delaware LLC.  In *CML V, LLC v. Bax*, 28 A.3d 1037 (Del. 2011), the Delaware Supreme Court found that the plain language of the Delaware Limited Liability Act unambiguously limited derivative standing exclusively to members or assignees of members of the LLC. *Id*. at 1041.  The applicable provision of the LLC Act reads as follows:

> In a derivative action, the plaintiff must be a member or an assignee of a limited liability company interest at the time of bringing the action and:
>> (1) At the time of the transaction of which the plaintiff complains; or
>> (2) The plaintiff's status as a member or an assignee of a limited liability company interest had devolved upon the plaintiff by operation of law or pursuant to the terms of a limited liability company agreement from a person who was a member or an assignee of a limited liability company interest at the time of the transaction.

6 Del. C. § 18-1002.

In *CML*, the court held that the Delaware General Assembly's use of the mandatory and exclusive "must," rather than the permissive "may" evidenced its intent to confer derivative standing rights to LLC members and assignees only. *CML*, 28 A.3d at 1042.  The *CML* court then contrasted this with the language of the statute governing derivative actions against a Delaware corporation—which the court had previously held did not bar creditors of insolvent corporations from derivative standing.  *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) ("creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties.").  The Delaware General Corporation Law, 8 Del. C. § 327 provides:

> In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such

> stockholder's stock thereafter devolved upon such stockholder by operation of
> law.

8 Del. C. § 327.

Section 327 does not explicitly mention a creditors' ability to maintain a derivative

action.  However, the Delaware Supreme Court held that the officers and directors of insolvent

corporations owe fiduciary duties to creditors because shareholders no longer have an economic

interest in an insolvent corporation. *Schoon v. Smith*, 953 A.2d 196, 208 n.46 (Del. 2008)

(interpreting the court's decision in *N. Am. Catholic Educ. Programming Found., Inc. v.

Gheewalla*, 930 A.2d 92, 101 (Del. 2007)).  Thus, Creditors are given derivative standing to

pursue breach of fiduciary duty claims against the directors of an insolvent corporation as

creditors take the place of shareholders. *Gheewalla*, 930 A.2d at 101.

Unlike the Delaware LLC statute, the Texas LLC statute contains the permissive "may"

and not the mandatory and exclusive "must" with regard to derivative standing.  Indeed, the

language in the LLC statute is almost identical to the Texas corporation statute, merely

substituting "member" for "shareholder". Tex. Bus. Orgs. Code § 21.552; accord Tex. Bus. Orgs.

Code § 101.452.  It is reasonable to conclude, therefore, that Texas courts would recognize the

ability of creditors to sue the officers and directors of an insolvent, non-operating LLC for

breaches of fiduciary duty under the same trust fund doctrine applied to Texas corporations.

### iv.        The Trustee Must Sue Derivatively

Even though I have concluded that creditors can rely on the trust fund doctrine to bring

derivative claims against the officers and directors of a Texas LLC,[29] there is one remaining

---

[29] The Trustee's has alleged that Our Alchemy is a creditor of ANConnect for purposes of the DUFTA.
Complaint, Adv. D.I. at 11. Defendants' dispute the Our Alchemy's creditor status but acknowledge that
such status is assumed to be true for purposes of this Motion. Defendants' Memorandum in Support, Adv.
D.I. 10 4 n.4.

hurdle that the Trustee fails to clear – the Complaint only alleges direct claims, not derivative claims against the Management Defendants.  As the Fifth Circuit recognized in *MortgageAmerica Corp*., if an action is to be brought under the trust fund doctrine "it must be brought on behalf of all those similarly situated, and [] a single creditor, acting on its own behalf, does not have standing." 714 F.2d at 1271 (citing, *Sutton v. Reagan*, 405 S.W.2d 828, 834-35 (Tex. Civ. App. – San Antonio 1966)).

A derivative suit allows the party bringing it to sue on behalf of the corporation for harm done to the corporation and any recovery for that harm goes to all stakeholders.  In other words, if the Trustee was successful in his claims against the Management Defendants, any amounts recovered would go ANConnect for the benefit of all ANConnect creditors, not just to the Trustee.  In a derivative suit, the corporation is a necessary party "so that it is not later subject to a second suit." *Providential Invest. Corp.*, 320 S.W.2d 415, 418 (Ct. Civ. App. Of Texas, Houston 1959). "The reason it appears formally as a defendant is because it is under the control of persons charged with the wrongs complained of in the suit and refuse to act." *Id. See also, Nguyen v. Nugyen*, 2021 WL 786628 *5 (Ct. Civ. App. Texas, Houston 2021) (quoting Providential).  The Trustee's Complaint does not allege that it is acting on a derivative basis and does not name the Business Defendants as nominal defendants on whose behalf he purports to act.  The failure of the Trustee to bring the claims derivatively is fatal to the Trustee's standing argument.[30]  For this reason, Counts II and III of the Complaint are dismissed.

---

[30] Whether the Trustee could bring derivative claims against the Management Defendants on behalf of all creditors of ANConnect in this Court would raise a serious issue of subject matter jurisdiction that I need not address here.

**C.       Leave to Amend**

In a footnote, the Trustee alternatively seeks leave to amend his Complaint if I determine

that any of his claims are insufficiently stated.[31]   Rule 15(a)(2), made applicable by Bankruptcy

Rule 7015, provides that "a party may amend its pleading only with the opposing party's written

consent or the court's leave. The court should freely give leave when justice so requires." Fed. R.

Civ. P. 15(a)(2).   Although courts in this circuit liberally allow such amendments, courts retain

their discretion to grant or deny such motions where there is undue delay, bad faith, a dilatory

motive, prejudice, or futility. *See Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*, Ch. 11

Case No. 16-11596 (KG), Adv. No. 18-50633 (KG), 2019 Bankr. LEXIS 2906, at *40 (Bankr. D.

Del. Sep. 16, 2019); *Miller v. Welke (In re United Tax Gp., LLC)*, Ch. 7 Case No. 14-10486

(LSS), Adv. No. 16-50088 (LSS), 2018 Bankr. LEXIS 1290, at *4 (Bankr. D. Del. Apr. 26,

2018); *Stanziale v. Khan (In re Evergreen Energy, Inc.)*, 546 B.R. 549, 565 (Bankr. D. Del.

2016) (quoting *Foman v. Davis*, 83 S. Ct. 227, 230 (1962).

The Trustee's footnote request for leave to amend is procedurally improper and,

therefore, insufficient to grant the requested relief. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222

(11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded

within an opposition memorandum, the issue has not been raised properly.").   Moreover, the

Trustee has failed to indicate any particular grounds on which the amendment is sought.

*Mackereth v. Kooma, Inc.*, No. 14-04824, 2015 U.S. Dist. LEXIS 63143, at *34 (E.D. Pa. May

14, 2015) (quoting *U.S. ex rel Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir.

2013)).   Because I am making a finding that the Trustee's request for leave to amend a complaint

---

[31] Plaintiff's Memorandum in Opposition, Adv. D.I. 13 at 30 n.12.

is improper based on procedural infirmities, I am not making a finding of undue delay, bad faith, a dilatory motive, prejudice, or futility.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

For the foregoing reasons, Defendants' Motion is **GRANTED** as to Counts II and III and **DENIED IN PART** as to Count I.  The Trustee's footnote request for leave to amend is also denied as procedurally improper.

Dated:  June 27, 2022

JOHN T. DORSEY, U.S.B.J.